2003-NMCA-077

70 P.3d 787

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Joseph R. GUTIERREZ, Defendant– Appellant.**

**No. 22,738.**

Court of Appeals of New Mexico.

April 24, 2003.

Certiorari Denied, No. 28,071, June 6, 2003.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant appeals from convictions of driving while under the influence of intoxicating liquor, speeding, and failing to obey a stop sign. He asserts (1) questions by the

prosecutor violated his right to remain silent, and (2) violation of the six-month rule in Rule 5–604(B) NMRA 2003. We affirm.

**BACKGROUND**

{2} Officer Gina La Brosse and Sergeant Randy Spear of the Police Department in Ruidoso, New Mexico, testified at Defendant's jury trial. The following occurred, according to their testimony. La Brosse spotted a vehicle running a stop sign and traveling twenty-seven miles per hour in a fifteen mile per hour zone. La Brosse engaged her emergency equipment and pursued the vehicle for three-tenths of a mile achieving speeds of fifty miles per hour, after which the vehicle pulled off the road into a restaurant parking lot. La Brosse did not lose sight of the vehicle during the pursuit.

{3} After La Brosse pulled in behind the vehicle, with the emergency equipment still on, Defendant exited the vehicle and headed toward the restaurant. La Brosse asked Defendant to return to his vehicle and requested his driver's license, registration, and insurance. La Brosse smelled the odor of alcohol, and noticed Defendant's eyes were red and watery, and his speech was slurred. Defendant first told La Brosse that he was going to Ruidoso Downs, and that he had pulled into the restaurant parking lot to get out of her way. When asked whether he had been drinking, Defendant initially said he had not, but later stated he had had three beers at 4:30 p.m. but that he was "fine to drive." La Brosse told Defendant she had reason to believe he was under the influence and was driving while impaired, and that she would be calling another officer to conduct field sobriety tests. According to La Brosse's testimony, Defendant "got very upset at that time and said that he didn't need this to happen. That he was fine to drive, that he was just going to friends," and that "he wouldn't drive[,] he would park the car."

{4} Upon his arrival, Sergeant Spear told Defendant that field sobriety tests would be conducted. Defendant refused and stated, "just arrest me." Spear explained to Defendant that if he were to pass the field sobriety tests, he would be free to leave. Defendant again refused, stating that the police "already ha[d] it made up in [their] mind[s]."

Defendant again stated, "just arrest me." Defendant was placed under arrest, taken to the police station, booked, and asked to submit to a breathalyzer test. He refused. Spear told La Brosse that a search warrant had been obtained and that La Brosse was to transport Defendant to Lincoln County Medical Center for a blood draw. The toxicology report from this blood draw revealed a .08 percent blood alcohol content. A toxicologist testified that Defendant's blood alcohol content at the time of the stop would have been somewhere between .10 and .14 percent.

{5} On direct examination, as a part of Defendant's case, Defendant testified that the vehicle was his. However, Defendant also testified that he refused to submit to the field sobriety tests because he was not driving the vehicle. Rather, he testified, a man named Dale was driving. He further testified he did not know Dale's last name, Dale had been drinking, he and Dale were on their way to a restaurant, Dale had already gotten out of the car by the time La Brosse arrived, Defendant had the keys because he had pulled them from the ignition, and he had not seen Dale since that evening. Significantly, during this direct examination, Defendant testified, "I just told [La Brosse] that I wasn't driving and that's why I wouldn't submit to a field sobriety test." The police officers' testimony during the State's case revealed no statement by Defendant regarding this "Dale" testimony.

{6} Defendant was convicted of driving while under the influence of intoxicating liquor, speeding, and failing to obey a stop sign. He appeals, contending the prosecutorial questioning during trial regarding whether he informed the police officers or the district attorney about "Dale" constituted improper comment on his silence in violation of the Fifth Amendment. He also contends that his trial was not commenced within six months as required under Rule 5–604(B).

**DISCUSSION**

**Preservation, Scope, and Standard of Review**

{7} The State asserts that Defendant failed to object to the prosecutor's questions. Defendant acknowledges this, but correctly

contends that no trial objection is necessary for review. *See State v. Telles,* 1999–NMCA–013, ¶ 4, 126 N.M. 593, 973 P.2d 845; *State v. Carrasco,* 1996–NMCA–114, ¶ 33, 122 N.M. 554, 928 P.2d 939, *aff'd and rev'd in part on other grounds,* 1997–NMSC–047, 124 N.M. 64, 946 P.2d 1075.

■ {8} Our Supreme Court has explained the parameters and nature of our review where impermissible prosecutorial comment on silence has been alleged but error was not preserved:

Notwithstanding the lack of a timely objection at trial, an appellate court will apply the doctrine of fundamental error and grant review of certain categories of prosecutorial misconduct that compromise a defendant's right to a fair trial. Remarks by a prosecutor that directly comment on a defendant's invocation of the right to remain silent after receiving warnings under *Miranda* ... fall into this category of error. The same rule applies to certain prosecutorial questions pertaining to the defendant's postarrest silence and certain testimony elicited by those questions. We apply this rule inasmuch as it is fundamentally unfair and a violation of due process to allow people's invocation of their right to remain silent to be used against them after they have been arrested and informed of this right. In such circumstances, a prosecutor's comment on the defendant's exercise of his [or her] fifth amendment right to remain silent may constitute error requiring reversal. To the extent that a trial court permits the prosecution to introduce evidence of a defendant's silence, we also apply the plain error rule.

*State v. Allen,* 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728 (alteration in original) (internal quotation marks and citations omitted).

■ {9} Defendant nowhere asserts either fundamental error or plain error. Although he cites cases that discuss such error, he nowhere argues that fundamental error or plain error occurred or how either error occurred. We normally refuse to step into review when not invited by the appellant to do so. However, we have not retreated from our deep concern, expressed in *State v. Hennessy,* 114 N.M. 283, 837 P.2d 1366 (Ct.App. 1992), about prosecutorial overreaching in comment-on-silence cases. *See id.* at 285–86, 837 P.2d at 1368–69 (stating "the remedy of automatic reversal regardless of objection" to be the favored practice in impermissible-comment cases "as a prophylactic measure to deter prosecutors from obtaining convictions by unfair tactics"), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 863 P.2d 1071 (1993); *see also State v. Garcia,* 118 N.M. 773, 777, 887 P.2d 767, 771 (Ct.App.1994) (referring to "the nearly twenty-year-old line of New Mexico cases that disapprove of prosecutorial use of postarrest silence"). Our role continues to be one of vigilance in discouraging prosecutors from unfair questioning of a defendant who testifies at trial in his own behalf. As a result, because of the nature of the prosecutorial questioning in this case, we give Defendant the benefit of the doubt in his appellate briefing and crack open the gate for fundamental error and plain error review in this case. "Because the facts are undisputed, we review de novo the legal question whether the prosecutor improperly commented on Defendant's silence." *State v. Foster,* 1998–NMCA–163, ¶ 8, 126 N.M. 177, 967 P.2d 852.

■ {10} No evidence exists in the record regarding whether the police officers informed Defendant, as required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that he had the right to remain silent. However, no issue exists regarding whether the questioning was permissible because *Miranda* assurances were not given. *See Fletcher v. Weir,* 455 U.S. 603, 605–07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (distinguishing between instances in which *Miranda* warnings are, and are not, given in light of whether comment on silence in a state court proceeding violates due process, and stating that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand"); *Garcia,* 118 N.M. at 777, 887 P.2d at 771 (noting that "the United States Constitu-

tion presents no impediment to the use of postarrest silence when the defendant did not receive *Miranda* warnings"; that New Mexico cases give no guidance on the distinction made in *Fletcher;* and determining that the same standard of review applied regardless of whether the defendant had received *Miranda* warnings). We decide the comment-on-silence issue in this appeal under the assumption that the *Miranda* assurance of the right to remain silent was given to Defendant.

■ {11} It is unclear whether the prosecutor's questions related to pre- or post-arrest discussions between Defendant and the police officers. Defendant argues his case as though the questions related to post-arrest silence. Since comment on prearrest silence is permitted under the United States Constitution, *Fletcher,* 455 U.S. at 604–06, 102 S.Ct. 1309 (discussing *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), from which this rule emanated), and *State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992), our review also assumes comment on postarrest, not prearrest, silence.

### Comment on Defendant's Silence

■ {12} Our first step is to determine whether error was committed. In general, the Fifth Amendment privilege against self-incrimination prohibits the prosecutor from questioning a defendant at trial in regard to the defendant's postarrest failure to speak. *See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (barring impeachment of a defendant on the basis of his postarrest silence following *Miranda* warnings, even when the defendant presents exculpatory testimony in his own defense at trial for the first time, to the surprise of the prosecution); *Garcia,* 118 N.M. at 778, 887 P.2d at 772 (holding prosecutor's questioning of police officer purportedly to discredit an anticipated alibi witness improper where the defendant's counsel mentioned an alibi in his opening statement); *State v. Isiah,* 109 N.M. 21, 24–25, 781 P.2d 293, 296–97 (1989) (stating that "it is generally error for the prosecutor to elicit the fact of a defendant's postarrest silence," and discussing the various

factors to consider in evaluating whether prosecutorial comments on an accused's failure to testify are constitutionally improper), *overruled on other grounds by Lucero,* 116 N.M. 450, 863 P.2d 1071; *cf. State v. Romero,* 94 N.M. 300, 301, 609 P.2d 1256, 1258 (Ct.App.1980) (holding that prosecutor's questioning of the defendant regarding his postarrest silence after alibi testimony, was a direct comment on silence and therefore lacked any significant probative value).

■ {13} Nevertheless, when a defendant testifies, he is subject, within the limits of certain rules, to cross-examination the same as any other witness. *Foster,* 1998–NMCA–163, ¶ 13, 126 N.M. 177, 967 P.2d 852. "[T]he privilege against self-incrimination is no bar to impeaching a defendant's testimony with evidence of the defendant's silence ... after arrest." *Id.* We have recognized the exception footnoted in *Doyle* that:

> It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant *who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest.* In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Romero,* 94 N.M. at 301, 609 P.2d at 1257 (internal quotation marks and citation omitted, emphasis added); *see also State v. Olguin,* 88 N.M. 511, 512–13, 542 P.2d 1201, 1202–03 (Ct.App.1975) (upholding as proper cross-examination under our rules of evidence a prosecutor's questions of a defendant about silence in the face of police questioning where the defendant, who was charged with receiving stolen property, after receiving *Miranda* warnings, told the police "he didn't know nothing," then gave an exculpatory statement the goods were already in the car when driver picked him up, and at trial testified he found the property in an abandoned warehouse).

■ {14} Defendant challenges the following questioning during the prosecutor's cross-examination of him, which occurred af-

ter Defendant testified on direct in his own behalf that he told La Brosse that he was not driving the vehicle and that was why he would not submit to field sobriety tests: "Did you tell Officer LaBrosse that you hadn't been driving?" "But you didn't volunteer when she said[,] 'I want you to take some field sobriety tests'?" "And then when she came back to talk to you about sobriety tests, etc.[,] you didn't tell her, 'I wasn't driving'?" "Did you tell her, 'I wasn't driving'?" "Did you tell Officer Spear who was driving?" "Did you volunteer?" Defendant also challenges the prosecutor's question, "Did you ever tell the District Attorney about this?" These questions on cross-examination obviously stemmed from Defendant's testimony on direct examination. Thus, in his testimony, Defendant not only presented an exculpatory version of events, he also testified he told the police the same version upon arrest.

{15} While we continue to recognize that evidence of silence at the time of arrest generally may not be very probative of a defendant's credibility, see United States v. Hale, 422 U.S. 171, 176, 180, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and Fletcher, 455 U.S. at 604–05, 102 S.Ct. 1309, in the circumstances here, the cross-examination was probative of Defendant's credibility and constituted acceptable impeachment. See Romero, 94 N.M. at 301, 609 P.2d at 1257 (recognizing exception to general rule that "[p]ost-arrest silence will never have any significant probative value when used in an attempt to impeach an exculpatory story presented at trial," the exception being when a defendant testifies to an exculpatory version of events and claims to have told the police the same version upon arrest); Olguin, 88 N.M. at 513, 542 P.2d at 1203 (permitting cross-examination involving questions about postarrest silence to impeach credibility by showing prior inconsistent statements). The questions came within appropriate bounds of Rule 11–611(B) NMRA 2003 of our rules of evidence which permits cross-examination on matters affecting the credibility of the witness. Olguin, 88 N.M. at 513, 542 P.2d at 1201.

■ {16} Furthermore, the prosecutor's inquiries as to whether Defendant informed the police and the district attorney of his alibi did not violate Defendant's Fifth Amendment right to remain silent. See Foster, 1998–NMCA–163, ¶¶ 13, 15, 126 N.M. 177, 967 P.2d 852 (affirming the defendant's conviction despite allegation of improper prosecutorial comment on defendant's silence where prosecutor asked defendant whether he had mentioned mitigating factor to police on day of arrest because "the privilege against self-incrimination is no bar to impeaching a defendant's ... silence prior to arrest, or even after arrest") (citations omitted); see also Anderson v. Charles, 447 U.S. 404, 407–08, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (holding prohibition against "impeachment on the basis of a defendant's silence following Miranda warnings .... does not apply to cross-examination that merely inquires into prior inconsistent statements"); Allen, 2000–NMSC–002, ¶ 30, 128 N.M. 482, 994 P.2d 728 (concluding prosecutor's inquiry that elicited testimony that the defendant had knowledge of victim but that anything he said would implicate him in the death of the victim "did not involve the kind of reference to a defendant's silence that would require reversal under the doctrine of plain or fundamental error" because the prosecutor did not argue that the jury should infer the defendant's guilt from his failure to elaborate on his statement); State v. Rojo, 1999–NMSC–001, ¶ 56, 126 N.M. 438, 971 P.2d 829 (determining that the prosecutor's comment refuting the defendant's claim that he was not the killer and attacking the credibility of his trial testimony by "contrasting the indirect manner in which he denied killing the victim with the more explicit denial offered by the victim's fiance" did not rise to the level of fundamental error); State v. Loera, 1996–NMSC–074, ¶¶ 7–9, 122 N.M. 641, 930 P.2d 176 (holding that prosecutor's inquiry as to whether the defendant ever stated that he was shot at or whether he stated that an occupant of another vehicle first shot at him did not constitute an impermissible comment on his right to remain silent where "answer could have furnished evidence from which the jury could infer that [defendant's] self-defense theory had been recently fabricated").

{17} Even were the prosecutor's questions arguably improper, the error was harmless, because any prejudicial effect of

the questions was minimal in comparison to the overwhelming evidence of Defendant's guilt. *See State v. Duffy*, 1998–NMSC–014, ¶ 59, 126 N.M. 132, 967 P.2d 807 (holding any improprieties due to prosecutorial comment on silence during closing arguments to be "outweighed by the overwhelming evidence [supporting the] conviction," making any error harmless); *Telles*, 1999–NMCA–013, ¶ 11, 126 N.M. 593, 973 P.2d 845 (assuming arguendo improper comment on silence, holding evidence against the defendant overwhelming and prejudicial effect minimal in comparison); *Hennessy*, 114 N.M. at 289, 837 P.2d at 1372 (stating that prosecutor's comments on silence may be harmless error if overwhelming evidence of guilt exists); *see also State v. Barrera*, 2001–NMSC–014, ¶ 21, 130 N.M. 227, 22 P.3d 1177 (applying test of overwhelming evidence of guilt in a fundamental error analysis).

{18} Moreover, were error to exist, it would not constitute fundamental error. From the record, we cannot conclude guilt to be so doubtful that it would shock the judicial conscience to allow the conviction to stand. Neither can we conclude that the inquiries violated any of the more general tests for fundamental error mentioned in our jurisprudence, namely, that the inquiries were so blatant and prejudicial as would constitute a miscarriage of justice, that Defendant was deprived of substantial justice, or that judicial integrity was undermined as a result of a fundamental unfairness. *See State v. Traeger*, 2001–NMSC–022, ¶¶ 18, 25, 130 N.M. 618, 29 P.3d 518; *State v. Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176; *Lucero*, 116 N.M. at 453, 863 P.2d at 1074.

{19} Nor was there plain error. We may "tak[e] notice of plain errors affecting substantial rights although they were not brought to the attention of the [district] court." Rule 11–103(D) NMRA 2003; *Telles*, 1999–NMCA–013, ¶ 5, 126 N.M. 593, 973 P.2d 845. Plain error applies only to errors in evidentiary matters. *Lucero*, 116 N.M. at 453–54, 863 P.2d at 1074–75. But even under a plain error analysis, Defendant cannot obtain a reversal. We see no violation of or interference with Defendant's substantial rights. *See Allen*, 2000–NMSC–002, ¶ 30, 128 N.M. 482, 994 P.2d 728 (holding inquiries not to constitute plain error); *Telles*, 1999–NMCA–013, ¶¶ 5–9, 126 N.M. 593, 973 P.2d 845 (same). We apply the plain error rule sparingly. *State v. Paiz*, 1999–NMCA–104, ¶ 28, 127 N.M. 776, 987 P.2d 1163. We must have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding. *Id.; see also United States v. Olano*, 507 U.S. 725, 734, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We have no such concern in this case.

**Violation of the Six–Month Rule**

{20} Defendant contends, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), that his trial surpassed the six-month limit within which trial was to be commenced under Rule 5–604(B).

{21} The State filed a criminal complaint in magistrate court on February 4, 2000. Defendant was arraigned the same day. He was bound over April 18, 2000, for trial in the district court. The bind-over order was filed in the district court on May 18, 2000. On May 26, 2000, the State filed a criminal information in the district court charging defendant with the offenses with which he was charged in the magistrate court. Defendant was arraigned in district court on July 26, 2000, and his trial was set as the third case for November 13, 2000. On November 13, 2000, the court vacated this trial date because a case placed higher on the docket went to trial, and reset Defendant's trial for April 23, 2001. Pursuant to Rule 5–604(C), the State, with Defendant's approval, filed a Petition for Extension of Time on December 18, 2000, which the court granted the same day. The order extended the time within which trial may be commenced to, and including, April 26, 2001. Defendant was brought to trial on April 23, 2001.

{22} We hold that the timing of Defendant's trial did not violate Rule 5–604(B). The extension was obtained within six months of the arraignment and through agreement of the parties. *See State v. Eskridge*, 1997–NMCA–106, ¶ 10, 124 N.M. 227,

947 P.2d 502 (explaining that "the appropriate inquiry [to determine whether there has been a violation of the six-month rule] is whether, before the Rule expired, an oral or written agreement was reached"); *State v. Sanchez,* 109 N.M. 313, 316, 785 P.2d 224, 227 (1989) (recognizing that "5–604 does not speak to a situation in which the parties among themselves agree to have waived the strict provisions of the rule," but finding no such violation where prudence and common sense dictated such a result); *State ex rel. Delgado v. Stanley,* 83 N.M. 626, 626–28, 495 P.2d 1073, 1073–75 (1972) (concluding, under predecessor to Rule 5–604, that where there was no evidence that the State filed a *nolle prosequi* and later filed a new information or procured new indictments to delay or circumvent the operation of the six-month rule, there was no violation of the rule).

CONCLUSION

{23} We affirm.

{24} **IT IS SO ORDERED**

A. JOSEPH ALARID, Judge, concurring in result only.

IRA ROBINSON, Judge, concurs.