This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  **No. A-1-CA-36091**

**JERRY KENNEDY, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana Zamora, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie Pollard Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

D. Eric Hannum
Albuquerque, NM

McCleary & Richter-Freund
Mary McCleary
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GALLEGOS, Judge Pro Tempore.**

{1}    Defendant Jerry Kennedy, Jr., appeals from the district court's affirmance of his convictions after a jury trial in metropolitan court for driving while intoxicated (DWI), speeding, and resisting arrest. The issue before this Court is two-fold: (1) whether the State's comments in closing arguments bearing upon Defendant's silence violate his constitutional privilege against self-incrimination and right to due process, and (2) whether the metropolitan court erred in denying Defendant's motion for a mistrial on that basis. We conclude that while the State infringed upon Defendant's right to due process, its comments nevertheless did not deprive Defendant of a fair trial. We therefore affirm.

**BACKGROUND**

{2}    While driving the speed limit on San Mateo Boulevard at approximately 8:00 p.m. on December 8, 2014, Albuquerque Police Officer Charles W. Miller noticed a blue truck and a black Honda "going well faster than" his vehicle. Although the blue truck and black Honda appeared to be going the same speed, Officer Miller pulled over the black Honda as it was closer to his vehicle. During the traffic stop, Officer Miller observed that the driver of the black Honda, Jessica Villalobos, was exhibiting signs of intoxication. While administering field sobriety tests (FSTs) to Ms. Villalobos as part of a DWI investigation, Officer Miller saw the blue truck drive past their location and park about three houses away on the

right side of the street. The driver got out of the truck, "went to the right real quick and then across the street to the left as [Officer Miller looked] southbound down the street." Although Officer Miller could not see their faces, he noticed that the driver and another person were standing outside and appeared to be talking and pointing in Officer Miller's direction. Officer Miller did not see either individual drinking, eating, or smoking.

**{3}** Approximately nine to ten minutes later, Defendant walked down the street toward Officer Miller. Defendant approached Officer Miller and asked him about posting bond for Ms. Villalobos. While speaking with Defendant, Officer Miller noticed a strong odor of alcohol coming from Defendant, and also observed that Defendant's eyes were bloodshot and his speech was "dragged, if not slurred, at times." Defendant confirmed both that he was driving the blue truck and that he was the person driving in front of Ms. Villalobos. Officer Miller then asked Defendant whether he had consumed alcohol that evening, to which Defendant responded that he drank a couple of beers around lunchtime.

**{4}** At that point, suspecting Defendant of DWI, Officer Miller asked Defendant to undergo a series of FSTs. Following Defendant's poor performance on the FSTs, Officer Miller told Defendant to turn around and put his hands behind his back. As Officer Miller approached, Defendant yelled an expletive and ran away. Officer Miller caught, physically restrained, and handcuffed Defendant. Officer

3

Miller then placed Defendant inside a patrol car. After having another officer transport Defendant to jail, Officer Miller administered a breath alcohol content (BAC) test to Defendant. Results from Defendant's breath samples revealed a BAC of 0.14 and 0.13. Defendant was charged with DWI, speeding, and resisting arrest.

{5}     At trial in metropolitan court, defense counsel told the jury in his opening statement that although Defendant consumed two beers earlier in the day, "there will be no evidence that he was intoxicated or impaired to any degree when he was driving." Defense counsel explained that after driving and parking his vehicle, "[Defendant] went to my witness's, James Chavez, his friend, they live in the same neighborhood, to pay him some money and he consumes some alcohol there." During the defense case, Mr. Chavez testified that Defendant went to his house around 8:00 p.m. and consumed a couple of shots of Jack Daniels whiskey and a beer during the fifteen to twenty minutes he was there. Mr. Chavez testified that Defendant wanted a cigarette and walked across the street to Mr. Chavez's brother's house to get one, and never returned. Defendant himself did not testify.

{6}     During closing argument, the State argued:

> [Defendant] didn't tell Officer Miller on December 8 of 2014 that he had just had a large amount of alcohol to drink. And if you're being investigated for DWI, I think it's a fact that might've come up at that time. When [Defendant] was being placed under arrest that would've been a very good time to say "Wait no let me explain. I was driving, but I drank after the fact." Instead he—

4

At that point, Defendant moved for a mistrial, arguing that the State was asserting that Defendant had a duty to explain himself. The State responded, "I'm not saying there's a duty, judge. I'm saying that using reason and common sense, it might've come up at this time. I do believe [defense counsel] has opened the door directly to this line of argument." After the metropolitan court stated it was not ready to declare a mistrial, defense counsel asked the metropolitan court "to caution the district attorney not to comment on my client's right to remain silent." The State explained that he had not done so, but was instead "talking about the date of the arrest." The metropolitan court stated, "Defendant has the right to remain silent. He could have indicated to the officer that he had a drink earlier but I think you need to be careful with that argument." During rebuttal, the State argued, without objection, "If you truly believe that [Defendant] drove to his friend's house, consumed several shots of Jack Daniels and a beer, then approached Officer Miller, and at no point in time during the investigation thought to tell Officer Miller that he had drank after he had driven, you know, you should find him not guilty. However, I don't think with all the facts in front of us that that creates a reasonable doubt."

{7}     Following the jury's guilty verdict on all counts, Defendant appealed to the district court. The district court affirmed the metropolitan court's judgment and sentence. In its memorandum opinion, the district court concluded that because

Defendant did not argue Officer Miller gave Defendant his warnings, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), "[t]he [State's] comment is, therefore, not a reference to post-*Miranda* silence and did not otherwise invade a direct constitutional protection. *See* [*State v.*] *Sosa*, 2009-NMSC-056, ¶ 26[, 147 N.M. 351, 223 P.3d 348]." The district court also concluded that the State's comment was "isolated and brief[,]" and Defendant "invited the State's comment by setting forth the drank-after-driving defense in opening statements and presenting the witness testimony to support it."

**DISCUSSION**

{8}     Defendant appeals from the district court's on-record affirmance of the metropolitan court's judgment and sentence. On appeal to this Court, Defendant challenges the metropolitan court's denial of his motion for a mistrial on grounds that the State commented on his silence in violation of his privilege against self-incrimination and his right to due process.

**I.     Standard of Review**

{9}     "For on-record appeals the district court acts as a typical appellate court, with the district court simply reviewing the record of the metro[politan] court trial for legal error." *State v. Hall*, 2016-NMCA-080, ¶ 7, 380 P.3d 884 (internal quotation marks and citation omitted). "In subsequent appeals such as this, we apply the same standards of review employed by the district court." *Id.* (internal

6

quotation marks and citation omitted). "Where the error is preserved, we review a district court's denial of a motion for mistrial on the basis of remarks made in closing argument for an abuse of discretion." *State v. Ramos-Arenas*, 2012-NMCA-117, ¶ 16, 290 P.3d 733 (alterations, internal quotation marks, and citations omitted). "An abuse of discretion exists when the [district] court acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (alteration, internal quotation marks, and citation omitted). "If a mistrial is denied, a new trial may be ordered on appeal unless the [s]tate can show the error is harmless." *State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211, 131 P.3d 61. "In the absence of a timely objection from a defendant, comments on a defendant's exercise of his or her . . . right to remain silent[] are reviewed for fundamental error." *Id*.

**{10}** Defendant objected to the State's first comment during closing argument. Defendant failed, however, to do so after the State's second comment during its rebuttal argument. However, we ultimately conclude that the result here would be the same regardless of whether we review for abuse of discretion or fundamental error. Therefore, in order to simplify our analysis, we will treat both comments as having garnered timely objections, and we review the metropolitan court's denial of Defendant's motion for a mistrial for abuse of discretion. To the extent that this requires us to resolve Defendant's argument that the State improperly commented

7

on his silence, our review is de novo. *See id.* ¶ 6 (explaining that the issue of whether the state's comments on a defendant's silence violated his constitutional rights "raise[s] questions of constitutional law, which we review de novo").

**II.     The Metropolitan Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a Mistrial**

{11}     When reviewing whether the State's comments during closing arguments warrant reversal, three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26. "These three factors are useful guides, but in the final analysis context is paramount." *Id.* ¶ 34. These factors are applied by our courts when reviewing for either an abuse of discretion or fundamental error. *See id.* ¶ 26 ("We have reviewed over 30 years of appellate decisions regarding challenges to closing arguments under both standards of review, and we discern three factors that appear to carry great influence[.]"). "Our courts also consider whether the evidence of guilt is overwhelming, whether the improper statement is corrected by counsel or limited by the court, or whether the fact manipulated by the statement is determinative to the outcome of the case." *State v. Sena*, 2018-NMCA-037, ¶ 17, 419 P.3d 1240. "The common thread running through the cases finding reversible error is that the [state's] comments materially altered the trial or likely confused the jury by distorting the evidence,

8

and thereby deprived the accused of a fair trial." *Id*. (alteration, internal quotation marks, and citation omitted). We consider each of these factors in turn.

**A.      The State's Comments Invaded a Distinct Constitutional Protection**

**{12}**      "New Mexico courts have long held that a prosecutor is prohibited from commenting on a defendant's right to remain silent[.]" *State v. McDowell*, 2018-NMSC-008, ¶ 4, 411 P.3d 337. "There are three independent underpinnings for [this prohibition]: (1) the constitutional privilege against self-incrimination, (2) constitutional due process, and (3) the rules of evidence barring irrelevant evidence . . . and evidence whose probative value is substantially outweighed by the danger of unfair prejudice[.]" *State v. Foster*, 1998-NMCA-163, ¶ 9, 126 N.M. 177, 967 P.2d 852 (citation omitted).

**1.      The State Commented on Defendant's Silence**

**{13}**      "We first consider whether the [state] commented on [the d]efendant's silence[.]" *DeGraff*, 2006-NMSC-011, ¶ 7. In so doing, we "consider whether the language used [by the state] was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the [defendant's] exercise of his or her right to remain silent." *Id.* ¶ 8 (internal quotation marks and citation omitted). "We evaluate the statement in context to determine the manifest intention that prompted the remarks as well as the natural and necessary impact upon the jury." *Id.* (internal quotation marks and citation

9

omitted). "Where comments by the prosecutor are ambiguous, we consider what inference the jury was asked to draw from the defendant's silence and the propriety of that inference." *Id*. ¶ 9.

{14} In the case before us, we are dealing with two separate comments by the State. The first comment by the prosecutor occurred during the State's closing argument:

> [Defendant] didn't tell Officer Miller on December 8 of 2014 that he had just had a large amount of alcohol to drink. And if you're being investigated for DWI, I think it's a fact that might've come up at that time. When [Defendant] was being placed under arrest that would've been a very good time to say "Wait no let me explain. I was driving, but I drank after the fact." Instead he—

The second comment, uttered during the State's rebuttal, was that Defendant "at no point in time during the investigation thought to tell Officer Miller that he had drank after he had driven."

{15} Our Supreme Court has determined that comments similar to those made in this case were comments on the defendant's silence. *See id*. ¶¶ 3-4, 9. In *DeGraff*, the state argued in closing argument that the defendant's failure to tell the police that he killed the victim to defend himself from the victim's "sexual advances," indicated that the defendant's subsequent explanation to that effect was fabricated. *Id*. ¶¶ 3-4. Our Supreme Court held that this comment was "implicitly ask[ing the jury] to reject [the d]efendant's self-defense explanation because [the d]efendant did not offer it immediately[,]" thereby "invit[ing] the jury to infer guilt from

10

silence." *Id.* ¶¶ 9-10; *State v. Hennessy*, 1992-NMCA-069, ¶¶ 18-19, 114 N.M. 283, 837 P.2d 1366 (concluding that the state's cross-examination of the defendant regarding his failure to tell the police his alibi before trial was a comment on his silence), *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, 116 N.M. 450, 863 P.2d 1071. *But cf. Foster*, 1998-NMCA-163, ¶¶ 14-15 (holding that when a defendant testifies, evidence of inconsistencies between the defendant's pretrial statements and trial testimony was proper). As our Supreme Court has explained, *Hennessy* and *Foster,* while seemingly contradictory, "illuminate the difference between a permissible comment on a defendant's incomplete statement, as in *Foster*, and commenting on a defendant's silence, as in *Hennessy*." *DeGraff*, 2006-NMSC-011, ¶ 9.

{16} For several reasons, *Foster* is inapposite here. First, Defendant did not testify and thus the State was not commenting on an inconsistency between Defendant's testimony and his pretrial statements to the police that he had drank a couple beers around lunchtime. Moreover, as in *DeGraff* and *Hennessy*, the State was commenting on Defendant's silence by highlighting his failure to tell Officer Miller that he drank after driving. The State was thus inviting the jury to infer that Defendant's drank-after-driving defense was fabricated. Consequently, we determine that the State's two statements constituted comments on Defendant's silence.

11

## 2. Defendant's Silence Was Constitutionally Protected

**{17}** To determine whether Defendant's silence was protected, we must appropriately categorize that silence. "There are four relevant time periods at which a defendant may either volunteer a statement or remain silent: before arrest; after arrest, but before the warnings required by *Miranda . . .* have been given; after *Miranda* warnings have been given; and at trial." *DeGraff*, 2006-NMSC-011, ¶ 11. Categorizing the silence is important because each of these time periods is afforded differing levels of protection. *See id*. ¶¶ 12-14.

**{18}** Defendant presents this case as involving post-arrest, post-*Miranda* silence. If Defendant is correct, the State's comments on his post-*Miranda* silence violate due process. *See DeGraff*, 2006-NMSC-011, ¶ 12 ("[D]ue process guaranteed by the Fifth Amendment [to the United States Constitution] protects post-*Miranda* silence."); *see also Doyle v. Ohio*, 426 U.S. 610, 617-19 (1976) (holding that using a defendant's post-arrest, post-*Miranda* silence for impeaching the defendant's testimony at trial is a violation of due process); *Wainwright v. Greenfield*, 474 U.S. 284, 292-93 (1986) (holding that, as in *Doyle*, it would be unfair to breach the promise assured in *Miranda* warnings by using a defendant's silence as affirmative proof of the defendant's guilt).

**{19}** The State, however, argues that the silence in this case occurred during the period of time following Defendant's arrest, but before he was read his *Miranda*

12

rights. As both sides point out, the question of whether and to what extent the state may use a defendant's post-arrest, pre-*Miranda* silence as affirmative proof of guilt has not been resolved in New Mexico. *See DeGraff*, 2006-NMSC-011, ¶¶ 13, 18 (noting the lack of New Mexico law on this issue, and assuming for purposes of that case that *Miranda* warnings were given); *State v. Gutierrez*, 2003-NMCA-077, ¶ 10, 133 N.M. 797, 70 P.3d 787 (same); *State v. Garcia*, 1994-NMCA-147, ¶¶ 10-11, 118 N.M. 773, 887 P.2d 767 (assuming for the purposes of that case that the same standard of review applies to post- and pre-*Miranda* silence). Thus, if the State is correct, we must determine whether, and to what extent, post-arrest, pre-*Miranda* silence can be used by the State as affirmative proof of guilt.[1]

{20} We note the metropolitan court did not make a finding regarding whether Defendant was given his *Miranda* warnings. However, with the benefit of Officer Miller's lapel camera footage, we are presented with evidence in the record from which we can determine whether *Miranda* warnings were given. *See State v.*

---

[1]The United States Constitution does not prohibit the use of post-arrest, pre-*Miranda* silence to impeach a testifying defendant at trial. *See Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (holding that it is not a violation of due process of law to impeach a testifying defendant with his post-arrest, pre-*Miranda* silence); *Foster*, 1998-NMCA-163, ¶ 13 (explaining that "the privilege against self-incrimination is no bar to impeaching a defendant's testimony with evidence of the defendant's silence . . . after arrest" (citations omitted)). However, Defendant did not testify in this case, and there is a division among the federal circuits as to whether the reading of *Miranda* warnings serves as the line separating post-arrest silence, which the state consistent with a defendant's privilege against self-incrimination, can and cannot use as substantive evidence. *See United States v. Wilchombe*, 838 F.3d 1179, 1190 (11th Cir. 2016) (describing the circuit-split).

13

*Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022 (explaining that "reviewing a video by itself is like reviewing any other documentary evidence, and we are in as good a position as the district court to view the video and interpret what it shows"), *rev'd on other grounds*, 2018-NMSC-007, 410 P.3d 186. Footage from Officer Miller's lapel camera reflects the passage of approximately ten minutes from the point at which Defendant first approached Officer Miller to when Officer Miller physically restrained and cuffed Defendant after Defendant attempted to run away. Additionally, roughly three minutes elapsed from when Officer Miller physically restrained and cuffed Defendant to when Officer Miller placed Defendant inside the patrol vehicle, at which point the lapel camera footage cuts off. During this time, Officer Miller was assisted by another officer. Neither Officer Miller nor any other officer gave *Miranda* warnings to Defendant during either period. With no evidence to the contrary, we conclude that Defendant was not given his *Miranda* warnings until, at the earliest, after he was placed inside the patrol vehicle. Therefore, as the State contends, there was indeed a period of time between Defendant's arrest and when he was presumably given his *Miranda* rights.

{21}     We are not convinced, however, that we are dealing solely with Defendant's silence during the period following his arrest, but prior to being advised of his *Miranda* rights. That is, there is nothing that necessarily tethers the State's comments on Defendant's silence to the post-arrest, pre-*Miranda* period. In fact,

14

the State's broad references to "December 8" and "during [the] investigation" could very well be seen to encompass the various pre-arrest, post-arrest but pre-*Miranda*, and post-arrest and post-*Miranda* time periods. As such, in categorizing Defendant's silence, we must assume that the State commented at least indirectly on Defendant's post-arrest, post-*Miranda* silence. Accordingly, we need not determine the extent to which post-arrest, pre-*Miranda* silence is protected, nor shall we weigh-in on the ongoing federal split of authority on this question. Instead, given the State's broad and vague statements during its closing argument and rebuttal, we conclude that the State's comments on Defendant's silence invaded a distinct constitutional protection, which weighs in favor of reversal.

**{22}** We pause to remind the State that it has the burden to prove a defendant's guilt beyond a reasonable doubt. It is not a defendant's obligation to prove him or herself not guilty. Delving into a discussion about why a non-testifying defendant remained silent obfuscates this burden. We have previously admonished the State to refrain from engaging in this type of trial stratagem, and we are compelled to do so again today. *See Hennessy*, 1992-NMCA-069, ¶ 23.

**B.     The State's Comments Were Isolated and Brief**

**{23}** "Extensive comment is more likely to cause error, whereas the general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." *Sosa*, 2009-NMSC-056, ¶ 29 (alteration, internal quotation

15

marks, and citation omitted). This Court has previously concluded that the state's comments are brief or isolated when they were limited to closing argument and were relatively brief. *See, e.g.*, *Sena*, 2018-NMCA-037, ¶¶ 16, 18 (determining that the state's comments were isolated and brief when they "were confined to closing argument and were relatively brief"); *State v. Landers*, 1992-NMCA-131, ¶¶ 11-12, 115 N.M. 514, 853 P.2d 1270 (concluding there was no reversible error when the state made one improper comment to the jury in closing argument before being admonished by the district court and another after being admonished), *overruled on other grounds by State v. Kerby*, 2005-NMCA-106, ¶¶ 26-29, 138 N.M. 232, 118 P.3d 740.

**{24}** In this case, the State's comments on Defendant's silence were isolated to closing argument and rebuttal and constituted a relatively brief portion of the State's roughly eleven-minute initial closing argument and five-minute rebuttal. Because the comments were not repeated or pervasive, we do not see this factor as weighing in favor of reversal.

## C. The Defense Invited the State's Comments

**{25}** Turning to the third factor, we note that defense counsel repeatedly asked Officer Miller on cross-examination whether he asked Defendant if he had consumed any alcohol after parking his vehicle. Defense counsel's repeated questioning as to whether Officer Miller asked Defendant about his alibi strongly

16

suggested that there was an account that Defendant had not relayed to the officer, and that the officer himself was to blame for not asking the correct questions. This line of questioning by the defense placed Defendant's silence—regarding his post-driving drinking exploits—directly into issue and practically invited the State to comment upon the account not provided at that time by Defendant. *But cf. Garcia*, 1994-NMCA-147, ¶ 15 (rejecting the state's argument that the purpose of its questioning of an officer was to explain why he had not investigated the defendant's alibi at the time of the investigation, because there was no evidence that the defense argued the state had failed to investigate the alibi properly). Consequently, this factor weighs against reversal.

**D.     Defendant Was Not Deprived of a Fair Trial**

{26}     Beyond the three factors previously discussed, *Sosa* requires that we analyze the context and determine whether the state's "comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." 2009-NMSC-056, ¶ 34. To resolve the question of whether the state's comments deprived the defendant of a fair trial, "we review the comment[s] in context with the closing argument as a whole and in the context of the remaining trial proceedings so that we may gain a full understanding of the comments and their potential effect on the jury." *Fry*, 2006-NMSC-001, ¶ 50 (internal quotation marks and citation omitted). Viewing the State's relatively brief

17

comments in context with the closing argument and the trial as a whole, we conclude the State's comments did not deprive Defendant of a fair trial. The thrust of the State's closing argument was to highlight Defendant's high BAC level, the short time frame available to Defendant after he parked his car to consume enough alcohol to reach that BAC level, his flawed performance during the FSTs, Mr. Chavez's potential bias as Defendant's long-time friend, and Defendant's attempt to run away, indicating consciousness of guilt. The comments on Defendant's silence were a very brief part of the State's closing arguments. Moreover, given the evidence of guilt presented by the State—including Defendant's admissions to driving and to having a couple of beers at lunchtime, his poor performance on the FSTs, and his breath test results of 0.14 and 0.13—we cannot say the State's comments materially altered the trial or confused the jury, thereby depriving Defendant of a fair trial. We therefore conclude that the metropolitan court did not abuse its discretion in denying Defendant's motion for a mistrial.

**CONCLUSION**

{27}    For these reasons, we affirm.

{28}    **IT IS SO ORDERED.**


_____
**DANIEL J. GALLEGOS, Judge Pro Tempore**

**WE CONCUR:**

18

_____

**J. MILES HANISEE, Judge**


_____

**HENRY M. BOHNHOFF, Judge Pro Tempore**