This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39885**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MIGUEL MORENO VALENCIA,**

Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Yvette K. Gonzales, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** The metropolitan court found Defendant guilty of one count of aggravated driving under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016),[1] and an open alcoholic container violation, contrary to

---

[1]Section 66-8-102(D)(3) was held to be unconstitutional by this Court in *State v. Storey*, "to the extent violation of it is predicated on refusal to consent to a blood draw to test for the presence of any drug in the defendant's blood." 2018-NMCA-009, ¶ 32, 410 P.3d 256. Defendant's conviction is not predicated on refusal of a blood test, and the holding in *Storey* therefore does not impact our review.

NMSA 1978, Section 66-8-138(B) (2013). On appeal, Defendant challenges two witnesses' in-court identifications at the virtual trial and raises three other arguments. We affirm.

**DISCUSSION**

**{2}** Because this is a memorandum opinion, we set forth facts only as they become pertinent to our analysis.

**I.     Defendant Demonstrated No Error in the Metropolitan Court's Admission of the In-Court Identifications**

**{3}** Defendant's challenge to the in-court identifications implicates federal[2] due process protections, which we review de novo. *See State v. Ramirez*, 2018-NMSC-003, ¶ 29, 409 P.3d 902. Two witnesses (the "civilian" and the "deputy") identified Defendant at the trial conducted by video conference. Defendant argues that both identifications were improperly suggestive, because Defendant was addressed by name, asked to come closer to the camera, and directed to remove his mask. Defendant did not object to the civilian's identification and on appeal does not argue for or apply the principles of fundamental or plain error. *See* Rule 12-321(B)(2)(b)-(c) NMRA (requiring preservation of issues but permitting review of unpreserved issues involving "plain error" or "fundamental error"). We therefore do not consider whether the civilian's identification of Defendant was properly admitted. *See State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (observing that when a defendant "nowhere argues that fundamental error or plain error occurred or how either error occurred[, w]e normally refuse to step into review when not invited by the appellant to do so").

**{4}** In order to determine the admissibility of the deputy's in-court identification, we consider whether "any suggestive procedures that occurred in the courtroom" were "ameliorated" by "other due process protections." *See State v. Antonio M.*, 2022-NMCA-041, ¶ 43, 516 P.3d 193, *rev'd on other grounds*, 2023-NMSC-022, ¶ 4, 536 P.3d 487.[3] In the ordinary course, "the due process check" on eyewitness identifications is linked to pretrial identification procedures—"only to improper police arrangement of the circumstances surrounding an identification"—and "not to suspicion of eyewitness testimony generally." *Ramirez*, 2018-NMSC-003, ¶ 31 (internal quotation marks and citation omitted). In that context, "due process concerns arise *only* when law enforcement officers use an identification procedure that is both suggestive and

---

2Defendant makes no independent argument under the New Mexico Constitution, and so we limit our analysis to the federal due process protections.

3Our Supreme Court recently reversed this Court's determination in *Antonio M.* that the identification procedures amounted to plain error. *See Antonio M.*, 2023-NMSC-022, ¶ 29). Specifically, the Court held that because identity was not at issue regarding the three relevant witnesses, no due process violation occurred. *Id.* ¶ 4. The Court, however, noted its "agreement with the Court of Appeals that the prosecutor's identification procedures may have been unnecessarily suggestive, notwithstanding the requirements of [the Court's COVID-19 order] but that issue escapes plain error review under the facts and procedural posture of this case." *Id.* ¶ 34, n.1 (citation omitted). We therefore address the due process issue that Defendant preserved.

unnecessary." *Id.* (internal quotation marks and citation omitted). Due process does not generally require a court to screen in-court identifications for reliability because "other constitutional safeguards provide a criminal defendant sufficient protection against any fundamental unfairness resulting from eyewitness identifications." *Id.* ¶ 35.

**{5}** In the present case, we share the concerns about the identification procedures employed that were set forth in *Antonio M.*, 2022-NMCA-041, ¶ 45 (describing as "highly suggestive, and consequently, unreliable" a procedure in which the state "suggested exactly who it wanted the witness to identify and did not allow the witness to identify [the person] on their recollection") and acknowledged by our Supreme Court. *See Antonio M.*, 2023-NMSC-022, ¶ 34, n.1 (agreeing that the "identification procedures may have been unnecessarily suggestive"). Unlike in *Antonio M.*, however, Defendant has not met his burden to demonstrate that other due process protections failed to ameliorate any fundamental unfairness. *See Ramirez*, 2018-NMSC-003, ¶ 35 (outlining the constitutional protections available to ameliorate "any fundamental unfairness resulting from eyewitness identifications"); *see also State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the [metropolitan] court's rulings, [and a]ccordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)). Despite referring to the circumstances of the deputy's in-court identification, Defendant focuses his appellate argument on the importance of the civilian's identification and testimony, which we have declined to review. Instead, we consider only Defendant's in-court identification by the deputy who had spent significant time in Defendant's company at the time of the incident. Though Defendant was called by name to approach the camera and remove his mask, the prosecutor asked the deputy whether he recognized anyone in the virtual courtroom. The deputy identified Defendant by way of a piece of clothing, and despite objecting to the procedure, Defendant did not question the deputy about his identification of Defendant. *Cf. Antonio M.*, 2022-NMCA-041, ¶ 45 (identifying the errors and concluding that "[n]o amount of cross-examination would lessen the impact of having the prosecutor, for three witnesses in succession, identify [the defendant] by name, ask that he remove his mask on command to be the only unmasked person in the room, and have each witness confirm that" the defendant was the person named). For these reasons, we hold that under the totality of these circumstances, Defendant has not demonstrated on appeal that the metropolitan court improperly admitted the deputy's identification testimony in violation of due process protections.

## II. Defendant Did Not Otherwise Establish Error

**{6}** Defendant's remaining arguments challenge the metropolitan court's rulings on a pretrial motion to suppress statements after a de facto arrest, the deputy's probable cause to arrest, and the evidence supporting the DWI conviction. We first address the related arguments regarding de facto arrest and probable cause. Whether to suppress evidence based on an improper de facto arrest requires a balance between the "character of the official intrusion on the person's liberty and its justification," which evaluates the "length of the detention, place of the detention, and restriction of the

defendant's freedom of movement" together with whether a "de facto arrest tainted an otherwise uncoerced consent" to the intrusion. *See State v. Jutte*, 1998-NMCA-150, ¶ 15, 126 N.M. 244, 968 P.2d 334 (alteration, internal quotation marks, and citations omitted). If a de facto arrest occurs, it requires probable cause, *see id.* ¶ 14, which exists "when the facts and circumstances within the officer's knowledge are sufficient to warrant the officer to believe that an offense has been or is being committed," *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 9, 143 N.M. 455, 176 P.3d 1187. Defendant filed a motion to suppress his statements to law enforcement, and argued that he had been subject to a de facto arrest unsupported by probable cause either at the time he was placed in the patrol vehicle in handcuffs or later when the deputy informed Defendant that he would be arrested for DWI.

{7}     The evidence, however, supports the metropolitan court's finding that Defendant initially requested to be placed in the patrol vehicle but that eventually the deputy told Defendant that he was "going to be" arrested for DWI. *See State v. Ortiz*, 2017-NMCA-062, ¶ 9, 400 P.3d 312 ("[W]e will not disturb the [metropolitan] court's factual findings if they are supported by substantial evidence." (internal quotation marks and citation omitted)). The metropolitan court appropriately (1) considered the place and length of the detention as well as Defendant's freedom of movement while he was handcuffed in the patrol car; (2) determined that Defendant was subject to de facto arrest when the deputy "indicate[d] he's probably going to arrest [Defendant] for DWI;" and (3) suppressed Defendant's statements to law enforcement after this point in the encounter. *See Jutte*, 1998-NMCA-150, ¶ 15. We therefore conclude that Defendant has not established that the metropolitan court incorrectly applied the law of de facto arrest to these facts when ruling on the suppression motion. *See Ortiz*, 2017-NMCA-062, ¶ 9 ("We review the [metropolitan] court's ruling on a defendant's motion to suppress to determine whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." (alteration, internal quotation marks, and citation omitted)).

{8}     We further agree with the metropolitan court that the deputy had probable cause to arrest. *See Granillo-Macias*, 2008-NMCA-021, ¶ 9. The deputy (1) arrived four to five minutes after the crash was reported and saw the unoccupied crashed car; (2) found Defendant lying ten to twenty yards away in the ditch water, huffing from an aerosol can with no one else in the area; (3) attempted to communicate with Defendant, who was incoherent; and (4) observed that Defendant had bloodshot and watery eyes, smelled of alcohol, slurred his speech, and was swaying and stumbling. *See id.* ("An officer does not have to observe a suspect actually driving in an impaired manner if the officer, based upon all the facts and circumstances, has reasonable grounds to believe that the driver had been driving while intoxicated." (text only) (citation omitted)).

{9}     Defendant additionally argues that the evidence did not support his conviction for DWI and specifically contends that the State failed to prove that he "drank alcohol or that, if he drank, he was impaired while driving." *See* UJI 14-4508 NMRA (listing the elements for aggravated DWI, including that "[t]he defendant operated a motor vehicle" and "[a]t that time the defendant was under the influence of . . . intoxicating liquor").

From the evidence at trial, the fact-finder could reasonably infer the evidence sufficient to support Defendant's conviction for DWI. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (text only) (citation omitted)). Around 5:30 p.m., the civilian saw a black Nissan stopped in an unusual position in the road with Defendant slouched down inside the still-running car, and during the civilian's and Defendant's subsequent interaction, the civilian formed the opinion that Defendant was "not coherent." Defendant drove away, the civilian called the police, and at 5:28 p.m., the police received a call that a Nissan had crashed nearby. The deputy responded and saw the crashed vehicle. He found Defendant incoherent in the nearby ditch, huffing aerosol, smelling of alcohol, slurring his speech, swaying and stumbling, and displaying bloodshot and watery eyes. Defendant had open containers in the vehicle and refused to take a breath test. Defendant argues that because the civilian testified that she did not smell alcohol, and the deputy found open cans in the car, "there was additional time for [Defendant] to drink." The fact-finder, however, "[was] free to reject [this] version of the facts." *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{10}  Applying our well-established standard of review, *see Cunningham*, 2000-NMSC-009, ¶ 26, we conclude that the fact-finder could reasonably infer from the evidence that Defendant drove while intoxicated, *see State v. Mailman*, 2010-NMSC-036, ¶¶ 23-24, 27-28, 148 N.M. 702, 242 P.3d 269 (noting that direct evidence is not required to support a DWI conviction and concluding that substantial circumstantial evidence supported the reasonable inference that the defendant drove while intoxicated in part because he "refused to take the field sobriety tests and the breath test, . . . he had an open can of beer on the center console of his vehicle . . ., and he was disoriented and confused, had bloodshot, watery eyes, and had difficulty maintaining his balance").

**CONCLUSION**

{11}  We affirm.

{12}  **IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**