This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39779**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SHANE BEARD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Emilio Chavez, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Shane Beard appeals his two convictions of criminal sexual contact of a minor (child under thirteen), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant makes six arguments: (1) his right against double jeopardy was violated by the manner in which the jury was instructed; (2) his constitutional right to a speedy trial was violated; (3) there was insufficient evidence that one of the incidents of sexual abuse occurred in New Mexico; (4) the district court abused its discretion in admitting certain testimony; (5) his due process rights were violated by the lengthy

charging period; and (6) the cumulative effect of the errors in his trial deprived him of a fair trial. We affirm.

**DISCUSSION**

**I.      Defendant's Right Against Double Jeopardy Was Not Violated**

**{2}**      Defendant's double jeopardy argument relates to the jury instructions given at trial. We review double jeopardy claims de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289. The jury was instructed on two counts of criminal sexual contact of a minor, and both instructions were identical—"true carbon copies"—wherein the sole distinguishing feature was the count number. These identical instructions contained no factual specificity related to the case itself, only standard uniform language: "[D]efendant touched or applied force to the unclothed mons veneris and/or vulva and/or vagina of [Child]."[1] *Cf.* UJI 14-925 NMRA.

**{3}**      Defendant contends that due to the lack of factual differentiation between the counts, the jury "could have" convicted him twice for unitary conduct. Relatedly, Defendant argues that the "carbon copy" jury instructions made it "impossible for the jury to convict on one count but not the other[,]" and that the same conduct may have been the basis of both convictions.

**{4}**      We confronted a similar double jeopardy challenge in *State v. Salazar*, 2006-NMCA-066, 139 N.M. 603, 136 P.3d 1013. In that case, the jury was given nine identical jury instructions for criminal sexual penetration of a minor. *Id.* ¶ 6. The instructions were true carbon copies: "The instructions did not distinguish among the charges in any way such as date, location, or acts alleged." *Id.* ¶ 29. There, as here, the crux of the defendant's claim of error was that the identical jury instructions presented the danger that "he *could have been* convicted on separate counts for unitary conduct." *Id.* ¶ 31 (emphasis added). The jury ultimately returned a verdict of guilty on two counts. *Id.* ¶ 6. On appeal, this Court held that because the victim had provided sufficient evidence to support the two convictions—i.e., "there was sufficient evidence presented to the jury from which it could have found two separate incidents of criminal sexual penetration"— there was no double jeopardy violation in the manner the jury was instructed. *Id.* ¶ 31. In short, although the jury instructions themselves failed to factually distinguish between the counts or link them to specific instances of conduct, the existence of sufficient evidence to support the guilty verdicts meant that there was no double jeopardy violation related to the jury instructions. This Court has twice reaffirmed the central holding of *Salazar*. *See State v. Martinez*, 2007-NMCA-160, ¶ 8, 143 N.M. 96, 173 P.3d 18; *State v. Dombos*, 2008-NMCA-035, ¶¶ 22-23, 143 N.M. 668, 180 P.3d 675.

**{5}**      We see no meaningful distinction between this case and *Salazar*. Like the victim in *Salazar*, Child testified to enough differentiated incidents to support Defendant's convictions. Child testified that the sexual contact by Defendant happened "more than

---

[1]The instructions also required the State to prove that Child was under thirteen years of age, and that the contact occurred in New Mexico during the charging period.

once," and occurred on different days in at least three of the rooms of Defendant's house. In addition to these accounts of sexual contact in the home, the incident of sexual contact testified to with the greatest factual particularity occurred when Defendant and Child were in the backseat of Child's grandmother's car while on a family outing. Clearly, the testimonial evidence adduced at trial—in which at least two distinct acts of sexual contact were described—supported the two guilty verdicts.

**{6}** We recognize that a case relied upon by Defendant, *State v. Candelaria*, 2019-NMCA-032, 446 P.3d 1205, contains language that appears somewhat at odds with the central holding of *Salazar*. In *Candelaria*, this Court read another case—*State v. Cook*, 2006-NMCA-110, 140 N.M. 356, 142 P.3d 944—to hold that "even if the evidence could have supported two different counts, because the jury instructions 'did not make clear to the jury which conduct it should consider to support each charge' the two convictions for tampering with evidence violated the defendant's double jeopardy rights." *Candelaria*, 2019-NMCA-032, ¶ 36 (quoting *Cook*, 2006-NMCA-110, ¶ 19). However, understood in its proper context, we believe there is a significant difference between the facts of *Candelaria* and the facts here. In *Candelaria*, this Court reversed one of the defendant's two fraud convictions because "the factual basis for differentiating between Counts 11 and 13 [was] not clear from the indictment, the jury instructions, or even the [s]tate's closing argument," and as a result, this Court concluded "that the jury could have convicted [the defendant] twice for the same conduct." *Candelaria*, 2019-NMCA-032, ¶ 40; *see also State v. Luna*, 2018-NMCA-025, ¶ 10, 458 P.3d 457 (stating that we look to closing arguments to clarify or confirm the state's theory of a case). Important to that conclusion was the state's closing argument, which at times apparently conflated the factual basis for the two counts of fraud. *Candelaria*, 2019-NMCA-032, ¶¶ 38-39.

**{7}** But here—far from conflating the counts—the State's closing argument directed the jury to only convict Defendant if it found him guilty of two *distinct* acts of criminal sexual contact of a minor—as mandated by *Salazar*. The prosecutor in Defendant's case emphasized the need to find that the underlying actions were separate, stating that Defendant could be convicted on two counts "as long as you find a touching happened at minimum two times." Moreover, we do not agree with Defendant's contention that it would have been "impossible for the jury to convict on one count but not the other." The jury might have found, for example, that only the most detailed allegation of sexual contact—the incident in the backseat of the car—was credible beyond a reasonable doubt, and thus might have returned only one guilty verdict. Defendant has not persuaded us that a double jeopardy violation occurred.

## II. Defendant's Speedy Trial Right Was Not Violated

**{8}** Defendant argues that the district court erred in denying his motion to dismiss based on violations of his constitutional right to a speedy trial.[2] In assessing speedy trial

---

2Defendant referred to the New Mexico Constitution in the district court and on appeal, but he does not argue that New Mexico's speedy trial guarantee affords greater protection than its federal counterpart. We therefore assume without deciding that both constitutions afford equal protection, analyzing the issue under one standard. *State v. Ochoa*, 2004-NMSC-023, ¶ 6, 135 N.M. 781, 93 P.3d 1286.

claims, we look to the four-factor analysis set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We weigh these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* ¶ 5 (internal quotation marks and citation omitted). "On appeal, we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (alterations, internal quotation marks, and citation omitted). Ultimately, "[t]he heart of the right to a speedy trial is preventing prejudice to the accused." *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387. To assess Defendant's speedy trial claim of error, we consider each of the *Barker* factors in turn.

## A. Length of Delay

**{9}** The first *Barker* factor functions "both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. It is a threshold question because in *Garza*, 2009-NMSC-038, our Supreme Court provided timelines for various types of cases that serve to trigger speedy trial analysis: twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Id.* ¶ 2. In *Garza*, the Court was clear that these "guidelines are designed to prompt the district court to conduct a speedy trial analysis, and do not dispose of the claim itself." *Ochoa*, 2017-NMSC-031, ¶ 13. In addition to this threshold purpose, the length of the delay is also a factor unto itself, which is to be weighed proportionally to the length of the delay: "As the delay lengthens, it weighs increasingly in favor of the accused." *Id.* ¶ 14.

**{10}** Here, the total length of delay was approximately thirty-one months, spanning from Defendant's initial criminal charging in magistrate court on March 21, 2018, until jury selection began on October 20, 2020. The district court considered this case complex, so an eighteen-month delay would have been sufficient to trigger speedy trial analysis. *See Garza*, 2009-NMSC-038, ¶ 2. Given that this case was delayed thirteen months beyond the relevant *Garza* parameter, we conclude: (1) the delay was sufficient to trigger speedy trial analysis; and (2) that the delay weighs heavily against the State. *See, e.g.*, *State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (reasoning that because the delay was nearly twice as long as the threshold, the factor weighed heavily against the state).

## B. Reasons for the Delay

**{11}** The second factor of the *Barker* test requires an evaluation of the reasons for each period of delay, and a determination of which party—if any—bears the responsibility for that delay. Our courts assess this factor by sorting the types of delay into categories and assigning each a different weight. As for delay attributable to the

State, there are three categories: "(1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason." *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (internal quotation marks and citation omitted). Deliberate or intentional delay weighs heavily against the state. *Id.* Negligent or administrative delay also weighs against the state, though not heavily. *See State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272. And "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (internal quotation marks and citation omitted). Finally, delay caused by the defendant is generally held against the defendant. *See State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. We assess each period of delay in turn.

### 1. March 21, 2018 to March 11, 2019 (Twelve Months)

{12} For much of the first twelve months of this litigation, the case proceeded normally. The State's initial charges involved multiple victims and seven felony counts. The Defendant waived his September 13, 2018 arraignment and pled not guilty, and shortly thereafter the State requested a scheduling order. In late November, the first jury trial setting was scheduled to begin March 11, 2019. Towards the end of the year, matters became more complicated. On December 18, 2019, Defendant's counsel withdrew due to discovery of a conflict involving an alleged victim. New counsel was appointed, and entered an appearance shortly after the turn of the year. Although the withdrawal of Defendant's first counsel is the cause of a later delay, we believe the first twelve months weigh neutrally—i.e., the first year of litigation would have been consumed by ordinary trial prep regardless. *See State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M 242, 195 P.3d 1254 (weighing period neutrally where "the case moved toward trial with customary promptness"), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

### 2. March 11, 2019 to May 6, 2019 (Two Months)

{13} On March 7, 2019, defense counsel moved to continue the March 11 jury trial setting, citing a lack of preparation time given his recent entry on Defendant's matter. This motion was opposed by the State, but was granted by the district court and the trial was reset for May 6, 2019. Defendant argues that because this delay was caused by his first attorney's "failure to identify the conflict more promptly[,]" it should not be held against Defendant. Our Supreme Court has approved of this reasoning, *see Serros*, 2016-NMSC-008, ¶ 36, and thus we weigh this period essentially neutrally.

### 3. May 6, 2019, Until January 27, 2020 (Eight months and Three Weeks)

{14} The next period of delay was attributable to various judicial reassignments. For reasons not entirely clear from the briefs or the record, the case was reassigned to a different judge in May 2019. This second judge was promptly excused by the Defendant. The State then requested a jury trial with the third, newly assigned judge, and a trial date was set for September 11, 2019. However, following a status hearing in June, the third judge recommended that the case be reassigned back to its initial judge,

and it was so ordered. Once the case was back with its original judge, the State again requested a trial setting, and a jury trial setting was scheduled for January 27, 2020. This type of delay—which "falls within the administrative burdens on the criminal justice system"—is, accordingly, administrative in nature and thus weighs against the State. *Garza*, 2009-NMSC-038, ¶ 29. Moreover, given the relative length of delay caused by this judicial reshuffle, we weigh it accordingly. *See Doggett v. United States*, 505 U.S. 647, 657 (1992) (noting that "our toleration of [negligent or administrative delay] varies inversely with its protractedness").

### 4. January 27, 2020, Until April 20, 2020 (Three Months)

**{15}** The State moved to continue the January 27, 2020 setting, with Defendant taking no position. The basis for this motion was that two of the State's "[e]ssential witnesses" would be unavailable that day. The district court granted the continuance, and the State again requested a trial setting. The trial was ultimately reset for April 20, 2020. Although the exact details of the witness unavailability are not entirely clear based on our review of the record, we accept the district court's determination that this continuance was justified "because witnesses were not available." Therefore, we agree this delay was valid and does not weigh against the State. *See Barker*, 407 U.S. at 531 (noting that "a valid reason, such as a missing witness, should serve to justify appropriate delay").

### 5. April 20, 2020 to October 20, 2020 (Six Months)

**{16}** The final period of delay was caused by various public health-related circumstances. On March 17, 2020, in response to the public health emergency caused by COVID-19, our Supreme Court issued an order suspending all not-yet-commenced criminal and civil jury trial trials absent "serious harm to the interests of the litigants or for other exceptional circumstances."[3] Although the suspension originally only lasted until April 30, 2020, later orders extended the pause until at least June 15, 2020.[4] Thereafter, pending the approval of recommencement plans, the various judicial districts of the state began holding trials on a limited basis in order to conform with social distancing protocols and other safety measures.

**{17}** Here, the April 20, 2020, setting was vacated by the district court's own order and reset for June 22, 2020—with no reason given in the record but presumably, given the timing, due to the Supreme Court's original order. On June 15, 2020, the district court

---

3Order, *In re Precautionary Measures for Court Operations*, No. 20-8500-002 (N.M. Mar. 17, 2020) at 3, https://www.nmcourts.gov/wp-content/uploads/2020/12/ Order-No_-20-8500-002-Precautionary-Measures-for-NM-Court-Operations-During-COVID-19-Public-Health-Emergency-3-17-20- 1.pdf.
4*See* Order, *In the Matter of Updated Precautionary Measures for Court Operations in the New Mexico Judiciary During the COVID-19 Public Health Emergency*, No. 20-8500-013 (N.M. Apr. 16, 2020) at 2, https://www.nmcourts.gov/ wp-content/uploads/2020/12/Order-No_-20-8500-013-Updating-and-Consolidating-Precautionary-Measures-for-Court-Operations-in-NM-Judiciary-4-16-20.pdf (extending suspension of jury trials until May 29, 2020); Order, *In the Matter of Recommencing Jury Trials During the COVID-19 Public Health Emergency*, No. 20-8500-020 (N.M. May 28, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-020-Order-Recommencing-Jury-Trials-5-28-20-2.pdf.

again continued the trial setting, stating that "[t]he Eighth Judicial District has not been authorized to resume jury trials under the Covid-19 precautions." Although neither the record nor the briefs indicate the exact date when the Eighth Judicial District's recommencement plans were approved by the Supreme Court, Defendant's trial was eventually set for October 19, 2020. The jury selection in fact began on October 20, 2020.

{18}    The parties agree that this pandemic-related delay should be weighed neutrally. Given that we have not been called upon to rule on the issue, in this case we assume without deciding that this six-month period of delay weighs neutrally. *Cf. State v. Pate*, 2023-NMCA-088, ¶ 9, 538 P.3d 450 (declining to "categorically assign to either party the weight of delay caused by the suspension of criminal jury trials due to the COVID-19 pandemic[,]" and instead holding that we must "consider the circumstances of the particular case").

## 6.    Summary

{19}    Twenty-three of the thirty-one months of delay in this case weigh neutrally. The only period that weighs in favor of one party is the eight months of judicial reassignments—which weigh against the State, but not in the same manner as intentional or deliberate delay. *Cf. State v. Gallegos*, 2016-NMCA-076, ¶¶ 33-34, 387 P.3d 296 (declining, in a simple case, to weigh "fourteen months and three weeks of negligent and administrative delay heavily against the [s]tate"). In sum, we believe that this factor weighs in favor of the Defendant, though not heavily.

## C.    Assertion of the Right

{20}    Under the third *Barker* factor, we look to the Defendant's assertions of his speedy trial right—assessing both "the timing of the . . . assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "Under this factor, we accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *State v. Samora*, 2016-NMSC-031, ¶ 19, 387 P.3d 230 (alteration, internal quotation marks, and citation omitted). Here, Defendant's first two assertions of his speedy trial right were pro forma motions, one by his first attorney and one by his eventual trial attorney. These motions were never argued. The third assertion came in the form of a motion to dismiss on speedy trial grounds, filed in late April 2020, after the pandemic-caused delay began. This motion contained an analysis of the *Barker* factors, and was filed concurrently with the fourth demand for speedy trial. The motion to dismiss on speedy trial grounds was eventually argued and ruled upon at a motion hearing held the day before jury selection began. The Defendant thus asserted his right four times, although two of those were pro forma and two were filed concurrently. On this basis, the district court weighed this factor in favor of the Defendant. We agree that this factor weighs in favor of the Defendant.

## D.    Prejudice to the Defendant

**{21}** The final factor looks to the prejudice caused to Defendant by the delay. In assessing this factor, we look to the three enumerated interests that the speedy trial right was designed to protect: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *Ochoa*, 2017-NMSC-031, ¶ 48. Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare [their] case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. It is ordinarily the defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *Samora*, 2016-NMSC-031, ¶ 21. In addition, "[i]n a speedy trial analysis, if any one of the [first] three *Barker* factors does not weigh heavily in favor of a defendant, . . . [the d]efendant must show particularized prejudice in order to prove their speedy trial [right] was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579.

**{22}** Here, the district court did not find that Defendant made a particularized showing of prejudice. Defendant testified under oath as to three categories of particularized prejudice: that, as a result of the lengthy delay, he (1) was forced to pay nearly $11,000 dollars for his GPS ankle monitor as a condition of his release pending trial; (2) was unable to apply for certain jobs that would have required interstate travel and also was unable to travel to see his family in Albuquerque; and (3) suffered undue stress—both physically and mentally. The district court rejected these arguments, essentially reasoning that his compliance with the ankle monitor GPS device allowed him to *avoid* oppressive pretrial incarceration; that Defendant had made no requests of the court regarding travel or work opportunities; and that the stress and anxiety he experienced was not unduly excessive given the types of charges he faced. *Cf. Garza*, 2009-NMSC-038, ¶ 35 (noting that "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial" (alterations, internal quotation marks, and citation omitted)). On appeal, Defendant simply states—with no analysis or citation to authority—that the financial burden related to the GPS monitoring "goes beyond the anxiety inherent in every criminal case." We are not persuaded by this conclusory statement, and we note that Defendant has not argued any impairment to his defense caused by the delay—the interest deemed "most serious" in the particularized prejudice analysis. *Barker*, 407 U.S. at 532. Given the terse argument on appeal and the lack of cited case law on whether the cost of court-ordered restriction alone can support a showing of particularized prejudice, we conclude that Defendant has not demonstrated a clear and particularized violation of any of the interests that the speedy trial right was designed to protect.

## E.    Weighing

**{23}** Because the reasons for delay do not weigh heavily in Defendant's favor, and Defendant has failed to demonstrate particularized prejudice, we conclude that no speedy trial violation occurred. *See Wood*, 2022-NMCA-009, ¶ 21.

## III.    Sufficient Evidence Supports the Finding the CSCM Occurred in New Mexico

**{24}** Child testified that one of the incidents of sexual abuse occurred in the backseat of her grandmother's car on a drive between Raton, New Mexico, and Pueblo, Colorado. Because this drive would have necessarily crossed state lines, Defendant argues on appeal that the State failed to prove with sufficient evidence that the criminal sexual contact occurred in the State of New Mexico. *See State v. Losolla*, 1972-NMCA-085, ¶ 4, 84 N.M. 151, 500 P.2d 436 ("One of the essential elements incumbent upon the [s]tate was to establish where the offense occurred, because the law is that a crime must be prosecuted in the jurisdiction where it was committed."). We disagree.

**{25}** We apply our ordinary sufficiency of the evidence standard, "view[ing] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "[J]urisdiction is satisfied if the trier of fact can infer from the evidence that the crime occurred in the state." *State v. Mirabal*, 1989-NMCA-057, ¶ 12, 108 N.M. 749, 779 P.2d 126.

**{26}** Under this standard, the evidence suffices. Child testified that the sexual abuse by Defendant happened "like a few minutes" after the car left Raton, New Mexico. When asked on cross-examination whether the touching happened in Colorado, Child said, "No, we were on the highway." Although Child later admitted she could not say "for sure where [they] were at on the highway," her testimony that the abuse did not occur in Colorado and her temporal estimations regarding proximity to Raton were sufficient to support a reasonable inference that the crime occurred in New Mexico. *See Mirabal*, 1989-NMCA-057, ¶ 12. To the extent that Child's uncertainty might have made her estimations less persuasive or credible, that question goes to evidentiary weight—a question within the purview of the jury. *See State v. McGhee*, 1985-NMSC-047, ¶ 17, 103 N.M. 100, 703 P.2d 877. We conclude that the State presented sufficient evidence of territorial jurisdiction.

## IV. We Decline to Review Defendant's Unpreserved Issue Regarding Admission of Evidence

**{27}** Next, Defendant argues that the district court erred in admitting certain testimony at trial from a Sexual Assault Nurse Examiner (SANE). The testimony in question related to observations from the SANE's examination of Child's hymen. We decline to review this unpreserved issue.

**{28}** To properly preserve an issue "it must appear that the appellant fairly invoked a ruling of the district court on the same grounds argued in the appellate court." *State v. Bregar*, 2017-NMCA-028, ¶ 29, 390 P.3d 212 (alterations, internal quotation marks, and citation omitted). On appeal, Defendant argues that this evidence was "irrelevant," *see* Rule 11-401 NMRA, and "prejudicial," *see* Rule 11-403 NMRA, because even under the State's initial theory of the case, no vaginal penetration was alleged and there was no evidence that any rubbing of the vulva could have caused any abnormality to Child's hymen. Defendant never made this argument at trial. Although Defendant objected

during the SANE testimony, he did so on an entirely different basis: that there was insufficient foundation to support certain assertions by the witness.

**{29}**    Defendant asserts in his reply brief that he preserved these arguments in an earlier motion hearing by "specifically ask[ing] the [district] court to preclude [criminal sexual penetration] evidence in the [criminal sexual contact] trial, on grounds of prejudice." We are not persuaded that this broad evidentiary request—which was argued pretrial in the context of Defendant's motion to sever counts—preserves the specific evidentiary challenge Defendant makes on appeal. The preservation requirement serves important purposes, including: "(1) to specifically alert the district court to a claim of error so that the error may be corrected at that time, (2) to allow the opposing party adequate opportunity to respond to a claim of error, and (3) to create a sufficient record to allow this Court to make an informed decision regarding the contested issue." *State v. Montoya*, 2016-NMCA-098, ¶ 15, 384 P.3d 1114 (internal quotation marks and citation omitted). To fulfill these purposes, the relevant invocation of an issue must be "made with *sufficient specificity* to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Lopez*, 1973-NMSC-041, ¶ 23, 84 N.M. 805, 508 P.2d 1292 (emphasis added). Because no such specific invocation was made here and because Defendant does not argue that an exception to the rule of preservation applies here, *see* Rule 12-321(B)(2) NMRA, we do not reach the merits of this claim of error. *See State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (noting that appellate courts generally decline to review for fundamental or plain error when not requested by the appellant). We therefore do not reach the merits of this claim of error.[5]

## V.    We Decline to Review Defendant's Unpreserved Due Process Challenge to the Charging Period

**{30}**    Defendant argues that his due process rights were violated by an unconstitutionally lengthy charging period, as reflected in the criminal information and subsequent jury instructions. In both, the criminal allegations against Defendant were alleged to have occurred sometime between January 1, 2014, and January 12, 2018—a period of just over four years. While the length of this charging period appears troubling, because the issue was not preserved, we lack a sufficient record to determine whether reversible error occurred under our precedent.

**{31}**    In *State v. Baldonado*, 1998-NMCA-040, 124 N.M. 745, 955 P.2d 214, this Court articulated a standard under which claims of unconstitutionally lengthy charging periods are to be assessed. This Court in *Baldonado* recognized that this issue is especially pertinent in cases involving child victims, who often lack a strong temporal awareness

---

[5]We also reject Defendant's contention that because the penetration charges were not dropped until after the State had rested its case, Defendant had no opportunity to object to the SANE testimony on grounds of relevance or undue prejudice. Given the State's initial theory of penetration charges involved a "rubbing" theory of penetration, we believe that evidentiary arguments regarding relevance and undue prejudice of the SANE's observations regarding Child's hymen could have been cogently raised at the time the testimony was elicited.

and thus have difficulty in specifying dates and times on which alleged wrongdoing occurred. In an attempt to navigate the "profound tension between the defendant's constitutional rights to notice of the charges against him and to present a defense, and the state's interest in protecting those victims who need the most protection,"1998-NMCA-040, ¶ 20 (internal quotation marks and citation omitted), we adopted a nonexclusive nine-factor inquiry to determine the "reasonableness of the [s]tate's efforts at narrowing the time of the indictment and measures the potential prejudice to the defendant of the time frame chosen by the [s]tate." *Id.* ¶ 26. We explicitly stated that this multifactor analysis was to be performed on a case-by-case basis, *id.*, and "requires *trial courts* to engage in a most delicate exercise" which "demands judging at its best." *Id.* ¶ 28 (emphasis added).

**{32}** The record before us contains no indication that the district court ever engaged in this delicate exercise, and—more importantly—it was never requested to do so. The constitutional implications of the charging period were simply never raised in the district court, and as such, there is nothing for this Court to review. Defendant's only potential anchor for preservation for this issue was a one-sentence pro forma "Motion for Statement of Facts" filed by Defendant's first attorney, filed concurrently with a request for disclosure and motion for speedy trial, also pro forma. For reasons not explained by either party, the statement of facts motion was never argued, ruled upon, or pursued subsequently. *See State v. Lamure*, 1992-NMCA-137, ¶ 13, 115 N.M. 61, 846 P.2d 1070 ("A party must invoke a ruling from the trial court in order to preserve an issue for appeal; it is not enough to simply make a motion."); *see also* Rule 12-321(A) ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). And importantly, because this pro forma motion did not specify the grounds on which a statement of facts was requested—i.e., whether it was directed specifically at the charging period or simply requested further factual development regarding the allegations—we decline to conclude that this motion was sufficient to fairly invoke a ruling on the constitutional implications of the charging period. As noted, one of the purposes of the preservation requirement is to "create a sufficient record to allow [appellate courts] to make an informed decision regarding the contested issue." *Montoya*, 2016-NMCA-098, ¶ 15 (internal quotation marks and citation omitted). The district court did not engage in the fact-intensive "delicate exercise" required by *Baldonado*, 1998-NMCA-040, ¶ 28, and we are unable to do so based on the insufficient record before us.

**{33}** Because Defendant has not asked us to apply an exception to the rule requiring preservation, Rule 12-321(B)(2), we decline to reach the merits of this claim of error. *See Gutierrez*, 2003-NMCA-077, ¶ 9.

## VI.    The Cumulative Error Doctrine Does Not Require Reversal

**{34}** Defendant argues that the combined effect of trial-related errors—i.e., the jury instructions, the territorial jurisdiction question, the hymen evidence, and the long charging period—cast doubt on the jury's guilty verdicts. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible

error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). Because Defendant has not persuaded us that any error occurred, the cumulative error doctrine does not apply. *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328.

**CONCLUSION**

**{35}** We affirm.

**{36}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**