# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMCA-011

Filing Date: March 3, 2025

No. A-1-CA-39883 and No. A-1-CA-40163
(consolidated for purpose of opinion)

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

MATTHEW CLAY MEDEMA,

      Defendant-Appellant.

APPEALS FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Conrad F. Perea, District Court Judge

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Alexander W. Tucker, Assistant Solicitor General
Albuquerque, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

The Law Office of Ryan J. Villa
Richelle Anderson
Albuquerque, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}** In this consolidated opinion,[1] Defendant Matthew Clay Medema appeals from his convictions for criminal sexual penetration (CSP) (use of force or coercion), contrary to NMSA 1978, Section 30-9-11(F) (2009); aggravated battery on a household member, contrary to NMSA 1978, Section 30-3-16 (2018); and false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963). Defendant raises five claims on appeal, as well as claiming cumulative error: (1) the district court erred in failing to strike a juror for cause; (2) the district court erred in excluding Victim's out-of-court statements allegedly relevant to her consent to sexual intercourse; (3) Defendant's conviction for aggravated battery on a household member either is not supported by the evidence or must be reversed because of misconduct by the prosecution in closing argument; (4) Defendant's conviction of both CSP by force or coercion and false imprisonment violated Defendant's right to be free from double jeopardy; and (5) the destruction of jury questionnaires pursuant to Rule 5-606 NMRA violated Defendant's constitutional rights and requires reversal. We agree with Defendant that the prosecution's remarks in closing argument on facts not in evidence were prosecutorial misconduct that likely impacted the jury's conviction of Defendant for aggravated battery of a household member, and we therefore reverse and remand for retrial on that count. We also conclude that Defendant's conviction of false imprisonment and CSP, under the circumstances of this case as presented by the State, subjects Defendant to double jeopardy. We therefore reverse his conviction for false imprisonment. We otherwise affirm.

## BACKGROUND

**{2}** Defendant and Victim lived together in the past and had a child together. Defendant and Victim stayed in contact after they broke up, and Defendant visited Victim about twice a week to spend time with their child. During some of these visits, Defendant and Victim would engage in consensual sexual intercourse.

**{3}** On September 22, 2018, Defendant visited Victim and their child. After putting their child down for a nap, Victim went to her bedroom and Defendant went to the bathroom. Victim testified that when Defendant left the bathroom, she was sitting on her bed. Defendant came over to her and hugged her, tightening his grip as she struggled to free her arms and escape. For three to five minutes, Victim tried to get Defendant to release her, without success, while repeatedly rejecting his attempts to engage in sexual intercourse. Victim and Defendant fell off the bed during this struggle and ended up on the floor with Defendant on top of Victim. Victim managed to crawl to the other side of the room, while still struggling to escape Defendant's grasp. According to Victim, Defendant straddled her and "[a]t some point, he started to choke [her], and [she] had a hard time breathing." Defendant then turned Victim on her stomach and penetrated her by force as she resisted.

---

1For reasons we explain, this opinion consolidates two appeals: Case Nos. A-1-CA-39883 and A-1-CA-40163. Because these cases stem from the same underlying trial court proceeding involving the same Defendant and request the same relief, we consolidate the cases for decision. *See* Rule 12-317(B) NMRA.

**{4}** Defendant left Victim's residence after the encounter and Victim went to dinner with her family. Later that night she went to the hospital for a sexual assault examination. Some small bruises on Victim's chest and upper arm were photographed and admitted into evidence. Victim did not testify to any other injuries. There were no visible injuries to Victim's neck.

**{5}** Defendant testified that the sex they had that day was consensual, and that they often playfully wrestled before having sex. Defendant described what happened on September 22, 2020, as consistent with other times he and Victim had consensual sex. Victim agreed in response to a juror's question that she and Defendant "had rough sex before where he would choke [her] a little," and "it was always consensual before."

**{6}** Defendant was charged with CSP by force or coercion; false imprisonment, defined in the jury instructions as restraining or confining Victim against her will, with knowledge that the restraint was unauthorized; and aggravated battery of a household member, requiring the jury to find, in relevant part, that "[D]efendant touched or applied force to [Victim] by pushing his hand against her neck"; and that "[D]efendant acted in a way that would likely result in death or great bodily harm to [Victim]." The jury was also instructed that "[g]reat bodily harm means an injury to a person which creates a high probability of death." The jury convicted Defendant on all three counts.

## DISCUSSION

### I. The District Court Did Not Abuse Its Discretion in Refusing to Strike Juror 134 for Cause

**{7}** Defendant contends the district court abused its discretion in failing to strike for cause a juror who disclosed during voir dire that she and her daughter were both victims of sexual assault. Defendant argues that Juror 134's answers to questions during voir dire established actual bias—that the juror could not be fair and impartial—and the district court's failure to excuse her, therefore, violated Defendant's right to a fair and impartial jury.

### A. Preservation and Harm

**{8}** We first note that Defendant preserved this issue for appellate review by moving to strike Juror 134 for cause during voir dire. *See* Rule 12-321(A) NMRA. When the district court refused to excuse Juror 134 for cause, Defendant used a peremptory challenge to remove the juror. Because Defendant used all of his peremptory challenges before the jury was seated, he has made a sufficient showing of harm to require remand for a new trial if the district court's denial of excusal for cause was an abuse of discretion. *See Fuson v. State*, 1987-NMSC-034, ¶ 9, 105 N.M. 632, 735 P.2d 1138. We, therefore, proceed to review Defendant's claim on the merits.

### B. Standard of Review

**{9}** Our standard of review of the district court's refusal to excuse a juror for cause is for abuse of discretion. *See State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523 ("We review the [district] court's rulings regarding the selection of jurors for an abuse of discretion." (text only) (citation omitted)). We will find an abuse of discretion in failing to excuse a juror only when the district court acts in an obviously erroneous, arbitrary or unwarranted manner by failing to excuse a juror who could not be impartial. *Id.*

**C.     Juror 134's Statements**

**{10}** Responding to a prosecutor's question during voir dire about what kind of evidence they would expect the State to produce to prove the case, Juror 134 stated, "I've been through [sexual assault] myself." The prosecutor asked Juror 134 if she would be able to set her experiences aside and be fair and impartial. Juror 134 responded, "I don't know what to say. It's kind of hard for me to say anything." The prosecutor asked Juror 134 if she would be willing to speak with the parties privately, and she agreed that she would. In chambers, the following colloquy ensued:

| | |
|---|---|
| State: | And I know I kind of asked would you be able to set your experiences aside, listen to the evidence in the case and be fair and impartial? |
| Juror 134: | Yes, I would. |
| | . . . . |
| Defense: | Do you think you'd believe the State more because of the fact this happened to you? |
| Juror 134: | Yes. |
| Defense: | So you really can't be fair in this situation, can you? |
| Juror 134: | Well, I don't know what—I don't know what the situation is. |
| Defense: | Would you believe the State more because this happened to you? |
| Juror 134: | I don't know what to believe yet. I have to hear more proof, I think. |
| Defense: | Do you think you'll be thinking about what happened to you previously, or just what's happened in this case? |
| Juror 134: | I will try not to think about what happened to me. Because I stay positive every day and just go forward. I try and leave |

that in the past. It's mostly my daughter. She's already older now, but it happened to her when she was nine. So I did put that person in prison for it.

Defense: So do you think that impacts you here today?

Juror 134: Yeah.

. . . .

State: Even knowing that you've gone through this and loved ones have gone through this, would you be able to focus on the trial as you're sitting there listening?

Juror 134: Yeah, because I've been through it already. No child should be going through this at all. Anybody, I mean adult. It's not fun. It's terrible.

State: Would you still give both parties a fair shake, defense and the State?

Juror 134: Yes, I think so. To find out what the truth is.

. . . .

Defense: Do you think what happened to your daughter might impact your thinking as to believing the State or [the] defense?

Juror 134: I try not to think about that, what happened to my daughter. It's kind of hard—

Defense: But do you think it would have an impact on you?

Juror 134: Yeah.

## D. Discussion

**{11}** Defendant subsequently moved to strike Juror 134 for cause. The district court denied that motion stating that the court would leave it to the parties to decide whether to exercise a peremptory challenge.

**{12}** Defendant argues on appeal that the district court abused its discretion in failing to excuse Juror 134 for cause because Juror 134 (1) failed to "unequivocally state that she could be fair and impartial," (2) acknowledged that her own experience and her daughter's experience "impacts her here today," and (3) "acknowledged that her own experiences made her more likely to believe the State's witnesses."

**{13}**   Defendant claims that Juror 134 needed to "unequivocally state" that she would be able to put her experience aside and be fair and impartial. Defendant's argument is based on a misunderstanding of this Court's opinion in *State v. Holtsoi*, 2024-NMCA-042, ¶ 9, 547 P.3d 770. This Court found in *Holtsoi* that a potential juror strongly stated his belief that he could *not* be fair and impartial. *See id.* ("Juror 23's statements combine to express his belief that he could not faithfully serve as an impartial juror and strongly support such an inference."). Given this strong statement by the juror that he could not be impartial, we concluded in *Holtsoi* that the district court judge's failure to excuse that juror for cause was an abuse of discretion. *Id.* ¶ 10. Our decision turned on the juror's unequivocal insistence that he could not be fair and impartial. *Id.* This approach is consistent with the principle that a juror, who unequivocally expresses actual bias, stating that they cannot be impartial, *must* be excused for cause. *See State v. Romero*, 2023-NMSC-014, ¶ 10, 533 P.3d 735. Where, however, a juror expresses potential bias, but does not unequivocally state that they cannot be fair and impartial, the defendant must establish with facts developed in voir dire "that the bias would actually affect the juror's vote." *Id.* ¶ 9; *see Holtsoi*, 2024-NMCA-042, ¶ 11 ("[A]ll potential jurors are presumed capable of impartial and fair consideration of the law and the facts of each case unless they indicate otherwise during voir dire.").

**{14}**   In this case, Juror 134 admitted that she had experiences in her life that had an impact on her and would impact her assessment of the evidence at trial. We have recognized, however, that requiring a juror to "purge [their] mind of all experiences and opinions" is "psychologically impossible." *State v. Fransua*, 1973-NMCA-071, ¶ 7, 85 N.M. 173, 510 P.2d 106. Each juror may weigh the evidence in light of their own experiences, and the verdict is the product of the collective experience of all twelve jurors. *Id.*; *see Romero*, 2023-NMSC-014, ¶ 7 ("We presume 'that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury.'" (quoting *Lockhart v. McCree*, 476 U.S. 162, 184 (1986))). The presumption is that each prospective juror can be fair and impartial, despite experiences in their past.

**{15}**   The question here is whether Juror 134's answers to the questions from the prosecution and Defendant revealed "actual bias," like that revealed in *Holtsoi*, where the juror "repeatedly and unequivocally indicated that he could not separate his bias regarding drug use from the facts of the case." 2024-NMCA-042, ¶ 7. We do not agree with Defendant that Juror 134's comments were comparable to the clear statement of an inability to be fair and impartial made by the potential juror in *Holtsoi*. In contrast to the juror in *Holtsoi*, Juror 134's answers to questions during voir dire revealed an ability and a willingness to listen to the evidence and make a decision based on that evidence.

**{16}**   Although Juror 134 admitted that her experiences with sexual assault would impact her during trial, this is not an admission that she has a bias, which would prevent her from making an impartial decision based on the law and the evidence. As stated in *Fransua*, 1973-NMCA-071, ¶ 7, all jurors have experiences that influence their view of the evidence, and these experiences are not inherently disqualifying. *See Johnson*, 2010-NMSC-016, ¶ 32 (holding, in a murder trial, that the district court properly denied

motions to strike two jurors who had loved ones murdered and admitted that the trial would bring back those memories, but asserted impartiality).

**{17}** Although Juror 134 initially answered "yes" to defense counsel's question if she would believe the State more than Defendant, upon further questioning by the defense, Juror 134 stated that she did not know "what the situation [was]," did not know "what to believe yet," and needed to "hear more proof." When asked by the prosecution if she would give both parties a fair shake, she responded, "Yes, I think so. To find out what the truth is."

**{18}** Given these answers, it was not arbitrary or unreasonable for the district court to conclude that Juror 134's experiences in the past would not prevent her from serving as an impartial juror. We therefore find no error in the trial court's exercise of its discretion to deny Defendant's motion to strike Juror 134 for cause.

## II.    Defendant's Claim That the District Court Erred in Excluding Victim's Out-of-Court Statements Was Not Preserved

**{19}** Defendant argues that the district court erroneously sustained two hearsay objections made by the State to Defendant's attempt to testify to two out-of-court statements made by Victim. Because Defendant did not raise the issues he now asserts in the district court, Defendant's arguments were not preserved and we will not consider them on appeal.

**{20}** Defendant first attempted to testify that Victim had stated earlier in the day of the incident at issue that she wanted to have sex with him that day. When the State objected to the admission of this statement on the grounds that it was hearsay, defense counsel argued that the statement was admissible nonhearsay because it was a statement by a party-opponent. *See* Rule 11-801(D)(2) NMRA. Defendant does not renew this argument on appeal, claiming instead that the district court erred in sustaining the objection because the statement fell within the then-existing state of mind exceptions to the rule against hearsay. *See* Rule 11-803(3) NMRA.

**{21}** Later in his testimony, Defendant was asked about Victim's answer to his allegedly asking her if she wanted to move from the bed to the floor. The State objected to this statement's admission, claiming it was hearsay. Defendant offered no response to this objection, simply saying, "Okay" when the district court sustained it. He argues on appeal that the statement was not hearsay to begin with and, if it was, it was admissible as a present-sense impression.

**{22}** Although we "do not apply the preservation requirement in an unduly technical manner," *In re Est. of Baca*, 1999-NMCA-082, ¶ 15, 127 N.M. 535, 984 P.2d 782 (internal quotation marks and citation omitted), it is necessary for the issue advanced on appeal to have been raised before the district court with enough specificity to "apprise[] the [district] court of the nature of the claimed error and invoke[] an intelligent ruling thereon," *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation

marks and citation omitted). *See* Rule 12-321(A); *State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *see also State v. Lucero*, 1986-NMCA-085, ¶¶ 9-11, 104 N.M. 587, 725 P.2d 266 (holding that the defendant's general hearsay objection did not preserve the argument on appeal that testimony did not fall within a specific hearsay exception). Defense counsel had an obligation to alert the district court to a permissible use of evidence in response to an objection to the admission of evidence by the opposing party. Absent a response to an objection from the State on the same ground now raised on appeal, the alleged error in admitting the evidence is not preserved and cannot be argued on appeal. *See State v. Arguello*, 2024-NMCA-074, ¶¶ 12-13, 557 P.3d 1018, *cert. denied*, 2024-NMCERT-009, 557 P.3d 995.

**{23}** Because Defendant's claims of error were not preserved and Defendant has not argued that any exceptions to the preservation rule apply here, we give these claims of error no further consideration. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("[G]enerally, . . . we [will not] address issues not preserved below and raised for the first time on appeal."); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant).

### III. The Prosecutor's Remarks, Without Support in the Record, Advising the Jury of the Amount of Pressure That Can Cause Unconsciousness, Constitutes Misconduct That Amounts to Fundamental Error

**{24}** Defendant argues that the prosecution's conduct in closing statements amounted to fundamental error. Defendant focuses on two alleged errors: (1) the prosecutor improperly communicated to the jury the State's view that the Defendant was not testifying truthfully; and (2) the prosecutor improperly testified in rebuttal closing by both mischaracterizing Victim's testimony and explaining to the jury, without supporting evidence in the record, that serious bodily harm can be caused by as little as four pounds of pressure applied to the neck. We are not persuaded that the prosecution's statements about the believability of Defendant's story were misconduct, but we do find fundamental error requiring reversal of Defendant's conviction for aggravated battery on a household member based on the prosecution's introducing evidence in closing from outside the record on a disputed element of the crime of aggravated battery—whether Defendant's pressure on Victim's neck was likely to result in death or serious bodily harm.

**{25}** Because Defendant made no objection in the district court to any part of the State's closing argument, we review for fundamental error. "'The first step in reviewing for fundamental error is to determine whether an error occurred. If that question is answered affirmatively, we then consider whether the error was fundamental.'" *State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (quoting *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192).

**{26}** Looking first to the prosecution's comments on the veracity of Defendant's story, we are not persuaded that these remarks were error, given that this case was a contest between two conflicting stories—Victim's and Defendant's. Where a case essentially revolves around "which of two conflicting stories is true, a party may reasonably infer, and thus argue, that the other side is lying." *State v. Aguilar*, 1994-NMSC-046, ¶ 23, 117 N.M. 501, 873 P.2d 247. And where the defendant has testified, as in this case, "[t]he prosecutor may comment on the credibility of defense witnesses," including the defendant. *State v. Rojo*, 1999-NMSC-001, ¶ 56, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted)); *see State v. Dominguez*, 2014-NMCA-064, ¶ 25, 327 P.3d 1092. Having found no error, we need not consider the second prong of the fundamental error analysis.

**{27}** We next consider Defendant's argument that the prosecutor's remarks in rebuttal closing—without supporting evidence in the record and without Defendant having an opportunity to respond—that four pounds of pressure on a person's neck will cause someone to become unconscious, constitute fundamental error. We turn first to whether the prosecutor's comments were error.

**{28}** In the initial closing argument, the prosecutor summarized Victim's testimony, stating that Defendant "pressed hard" on her neck and that "[Victim] couldn't breathe." We agree with the State that this statement appropriately summarized Victim's testimony that when Defendant had his hands on her neck, she "was having a hard time . . . breath[ing]." The prosecutor told the jury that "[w]e all know what happens if you cut off the blood flow to the brain for very long," reminding them it would cause death. Because that is common knowledge that strangulation for a long time can lead to death, and the jury can take that knowledge into account, these remarks were not error.

**{29}** In rebuttal closing, however, the prosecutor stated, "[I]t only takes four pounds— four pounds of pressure to cut off someone's blood supply to make them lose consciousness—[t]hat's all it takes, four pounds." The prosecutor's final comment to the jury was "[r]emember, four pounds of pressure . . . [is] all it takes." There is no testimony in the record about the amount of pressure that will result in loss of consciousness and, it is undisputed that Victim did not lose consciousness. There also was no testimony in the record about the amount of pressure Defendant applied.

**{30}** Although both parties are permitted wide latitude during closing arguments, the prosecutor's remarks must be based upon the evidence. "It is beyond the bounds of valid argumentation to recite prejudicial 'facts' that are entirely outside the evidence presented at trial. It is misconduct for a prosecutor to make prejudicial statements not supported by evidence." *State v. Duffy*, 1998-NMSC-014, ¶ 56, 126 N.M. 132, 967 P.2d 807 (citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{31}** The State admits that the challenged remarks have no support in the evidence, but claims that Defendant opened the door to these comments by arguing that Victim had not in fact suffered serious harm. If a prosecutor's comment is invited by a defense

argument, it does not constitute reversible error, even if the comment is improper. *State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64. We do not agree, however, that Defendant's closing argument—suggesting that the jury should consider whether severe harm or death had actually occurred in order to find "a likelihood of serious harm or death"—invited the prosecution to present evidence not in the record on the likelihood of harm. What was invited was a response pointing the jury to the instructions, stating that the jury must find Defendant "acted in a way that would likely result in death or great bodily harm to [Victim]." Instead, the State provided an additional, unsubstantiated fact to establish that Defendant's act met the likelihood of serious harm element of the offense. We therefore conclude that a remark introducing what could only have been presented as expert testimony during the trial, directly relevant to an element of the crime charged, not offered by the State, constitutes misconduct by the prosecution.

{32} Having found error, we now turn to consider whether the error was fundamental. Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial. *See Rojo*, 1999-NMSC-001, ¶ 55. To find fundamental error, we must be convinced that there is "a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). We will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process. *State v. Barber*, 2004-NMSC-019, ¶¶ 14, 16, 135 N.M. 621, 92 P.3d 633.

{33} The jury was instructed that, to find Defendant guilty of aggravated battery with great bodily harm, they were required to find, in relevant part, "[D]efendant acted in a way that would likely result in death or great bodily harm to [Victim]." The jury was also instructed that "[g]reat bodily harm means an injury to a person which creates a high probability of death."

{34} We briefly review the evidence in the record concerning Defendant's choking of Victim. According to Victim, Defendant straddled her and "[a]t some point, he started to choke [her], and [she] had a hard time breathing." Victim described Defendant as choking her with one hand for what felt like a few minutes, while ripping her clothes off with the other hand. When asked what she was thinking while Defendant was choking her, she stated, "I just wanted him to get off." There was also testimony from Nurse Sofia Osello and Detective Jeffrey Kuepfer that strangulation can occur without bruising.

{35} The evidence in the record left the jury with an extremely difficult question to answer about whether the prosecution had established, beyond a reasonable doubt, that Defendant had acted in a way that would likely result in death or a high probability of death when he "touched or applied force to [Victim]" by pushing one hand against her neck while ripping her clothes off with the other hand. Victim testified she had difficulty breathing, but never stated that she passed out or even almost passed out. Given these jury instructions and this equivocal evidence, the prosecutor's remarks that very little

pressure can be deadly, quantified at four pounds of pressure, repeated as the last words the jury heard before beginning deliberations, could have tipped the balance and led to a guilty verdict. Although the evidence is sufficient to uphold a conviction arrived at by a jury based on the evidence in the record, there is a "reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *DeGraff*, 2006-NMSC-011, ¶ 21. We therefore reverse and remand for a new trial on the aggravated battery of a household member count.

## IV. Double Jeopardy Prohibits Multiple Punishments for CSP and False Imprisonment in This Case

**{36}** Defendant next argues that his convictions of CSP and false imprisonment violate his right to be free from double jeopardy. We agree.

### A. Standard of Review

**{37}** We apply a de novo standard of review to a double jeopardy claim. *See State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects against "multiple punishments for the same offense." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (internal quotation marks and citation omitted).

### B. Defendant's Double Description Claim

**{38}** Defendant raises what is known as a double description claim. A double description violation occurs when an individual is convicted of more than one offense under different statutes for a single act or course of conduct. *State v. Vigil*, 2021-NMCA-024, ¶ 17, 489 P.3d 974. Defendant argues that he was convicted of both CSP by force or coercion and false imprisonment based on a single course of conduct—using the same force to restrain Victim and to force her to engage in sexual intercourse.

**{39}** Double description claims are subject to the two-part test adopted by our Supreme Court in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "The first part [of the test] focuses on the conduct and asks whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates multiple statutes." *Sena*, 2020-NMSC-011, ¶ 45 (alteration, internal quotation marks, and citation omitted). The second part of the test examines "whether the [L]egislature intended to create separately punishable offenses" based on the same conduct. *Id.* ¶ 45 (internal quotation marks and citation omitted). We reach the second part of the test only if we find Defendant's conduct to be unitary. *See Swafford*, 1991-NMSC-043, ¶ 38 (not reaching the second part of the test because the conduct was not unitary).

### C. Defendant's Conduct Was Unitary

**{40}** In determining whether Defendant's conduct is unitary, the first prong of the double jeopardy test, we must determine whether the two offenses the jury found Defendant committed were separated by "sufficient indicia of distinctness." *Id.* ¶ 26.

**{41}** Our Supreme Court recently held that in determining whether the conduct forming the basis of each conviction in a double description case is sufficiently distinct to avoid a double jeopardy violation, our courts should rely on the six factors identified in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. *See State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (holding that New Mexico applies the six *Herron* factors to determine whether there is distinct conduct in double description cases). The factors considered in *Herron* include: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12. Distinct conduct is supported by evidence in the record that "one crime is completed before another is committed," or "the force used to commit a crime is separate from the force used to commit another crime." *Id.* ¶ 38 (internal quotation marks and citation omitted).

**{42}** In determining whether two charged crimes are proved by conduct separated by "sufficient indicia of distinctness," we are directed by our Supreme Court to look to "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *See State v. Lorenzo*, 2024-NMSC-003, ¶ 6, 545 P.3d 1156 (text only) (citation omitted). This test has not changed significantly from earlier precedent that provides that "[t]he conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial," *see Swafford*, 1991-NMSC-043, ¶ 27, and directs this Court to examine the factual record. *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104; *see also State v. Begaye*, 2023-NMSC-015, ¶ 14, 533 P.3d 1057 (noting that the application of the unitary conduct portion of the test "is largely consistent" with longstanding precedent). Like *Begaye*, *Lorenzo* adopts *Franco*'s description of the "proper analytical framework," stating, in relevant part, that "'[t]he proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses.'" *Lorenzo*, 2024-NMSC-003, ¶ 8 (quoting *Franco*, 2005-NMSC-013, ¶ 7).

**{43}** *Lorenzo* applies the six *Herron* factors to the evidence in that record, noting that the two crimes at issue in that case occurred closely in both time and space; that, at no point had the armed robbery, the first crime, been completed before the aggravated battery occurred. *Id.* ¶ 10. The *Lorenzo* Court also found that the defendant's intent throughout the entire course of conduct was consistent, another *Herron* factor. *Id.* ¶ 12.

**{44}** In addition to analyzing the evidence as to the six *Herron* factors, the Court in *Lorenzo* also relies on the fact that "the [s]tate's presentation on appeal does not match its presentation at trial," noting that "had the [s]tate opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime," and concluding that "[t]he [s]tate may not now argue in the abstract about what it could have asked the jury to decide." *Lorenzo*, 2024-NMSC-003,

¶ 11. We understand this discussion in *Lorenzo* to direct that, in considering whether a defendant's conduct is unitary applying the six *Herron* factors, we should consider the State's presentation of the evidence to the jury at trial when the argument the State makes on appeal differs markedly from the State's presentation to the jury.

{45}  We now turn to the application of these principles to the facts presented to the jury by the State in this case. We begin with the jury instructions. As to the offense of CSP, the jury instructions directed the jury to convict if it found that Defendant unlawfully "caused [Victim] to engage in sexual intercourse through the use of physical force or physical violence." The jury instruction for false imprisonment directed the jury to convict if it determined that, knowing Defendant had no authority, Defendant "restrained or confined [Victim] against her will."

{46}  The State argues on appeal that Defendant's conduct was nonunitary because Defendant first restrained Victim against her will while she was on the bed, where the evidence described Defendant as "hugging" Victim tightly as she struggled to escape his grip, completing the crime of false imprisonment, before continuing to use what the State alleges on appeal was different force to accomplish sexual penetration. According to the State's brief on appeal, "the CSP did not occur until several minutes later after a prolonged struggle that included several other types of restraint." The State claims that the Defendant's act of "bear hugging [Victim] on the bed" "created a distinct restraint from the [continued] restraint Defendant then used to commit CSP."

{47}  As was the case in *Lorenzo,* the State's presentation on appeal does not match its presentation to the jury at trial. The State's legal theory in closing argument was that there was a single, continuous struggle between Defendant and Victim, during which Defendant's intent was consistently to force Victim to engage in sexual intercourse. The State described Victim, while restrained on the bed, as "continu[ally]" telling him "no," and trying to get away, without success. The State argued in closing, again pointing to the struggle on the bed that "[Victim] did not want to have sex and could not get away, and [Defendant] was forcing it upon her." The State described the CSP occurring as "[Victim] was trying to get away; [Defendant] was holding on and would [not] let her get away," describing Defendant's restraint of Victim as continuous and intended from the outset to force Victim to have intercourse.

{48}  As in *Lorenzo,* it is possible, had the State presented the theory it now raises on appeal, that the jury would have relied on the distinction between the force on the bed used to restrain Victim and the force during the struggle on the floor and at the time of penetration, deciding that distinct conduct satisfied the elements of each crime. Because, however, the State did not make this argument to the jury or present the evidence this way, we will not review the evidence in the abstract. *See Lorenzo*, 2024-NMSC-003, ¶ 11.

{49}  Viewing the evidence as the jury was instructed to view it, rather than how the State argues on appeal, Defendant's conduct was unitary. Victim was restrained from the outset with the consistent intent by Defendant to force Victim to engage in sexual

intercourse. The same force was employed to restrain Victim for purposes of false imprisonment as was employed to accomplish penetration without Victim's consent. The jury, directed by the State's closing to consider the encounter as a continuous restraint of Victim by Defendant, ending in CSP, would not have reasonably found the distinctions the State now argues on appeal. Therefore, Defendant's conduct was unitary.

**D.      The Legislature Did Not Intend to Permit Multiple Punishments Under These Two Statutes for the Same Conduct**

**{50}**    Having determined that the conduct relied on to convict Defendant of the two offenses was unitary, we proceed to the second *Swafford* prong: "whether the Legislature intended to create separately punishable offenses." *State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (text only) (citation omitted). Because the CSP and false imprisonment statutes do not expressly permit multiple convictions, *see* § 30-9-11(F); § 30-4-3, we consider whether the Legislature intended multiple punishments under the circumstances in this case. *See Begaye*, 2023-NMSC-015, ¶ 21.

**{51}**    We first determine whether the modified *Blockburger* test or the strict-elements *Blockburger* test applies. *See Blockburger v. United States*, 284 U.S. 299 (1932); *see also Begaye*, 2023-NMSC-015, ¶ 23 (providing that the reviewing court must "examine the statutes at issue to discern whether the modified or strict-elements *Blockburger* test applies," and "should then apply either the modified or the strict-elements test—but not both"). We have little difficulty concluding that both statutes require the application of the modified *Blockburger* test. The CSP statute allows sexual penetration to be accomplished either by violence or by coercion, and the false imprisonment statute allows false imprisonment to be accomplished by restraint or confinement, each of which can be achieved in multiple ways. Accordingly, we must apply the modified *Blockburger* test.

**{52}**    In applying the modified *Blockburger* test, we examine each offense, looking to the State's theory of each offense, rather than the statutory elements in the abstract. *See State v. Branch*, 2018-NMCA-031, ¶ 25, 417 P.3d 1141. If under the State's theory of the case as presented to the jury all elements of one offense are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *See State v. Silvas*, 2015-NMSC-006, ¶ 12, 343 P.3d 616; *see also Begaye*, 2023-NMSC-015, ¶ 24 ("We examine each offense keeping in mind that determining whether one offense subsumes the other *depends entirely on the* [s]*tate's theory of the case.*" (emphasis added) (alteration, internal quotation marks, and citation omitted)).

**{53}**    As previously discussed, the jury was instructed, and the State argued, that to convict Defendant of false imprisonment of Victim the jury needed to find that Defendant had restrained or confined Victim against her will and that Defendant knew this restraint or confinement was unauthorized. The theory for false imprisonment pursued by the State in this case was that Defendant continuously restrained Victim with the aim of

penetrating her, while she struggled to escape and repeatedly begged Defendant to let her go. Under the State's theory of the case, Defendant's conduct in restraining or confining Victim was the same conduct that was described as the force required to convict Defendant of CSP, and Victim's struggle and expressed wish to escape, communicated to Defendant, was the proof of both Defendant's understanding that his conduct was not authorized, as well as proof of the unlawfulness and lack of consent elements of CSP. There is, therefore, no element of proof required to convict of false imprisonment, as that crime was presented to the jury by the State, that was not also required to convict Defendant of CSP. One crime—false imprisonment—was fully subsumed with the other. Defendant's right to be free from double jeopardy was, therefore, violated and "the inquiry is over." *See id.* ¶ 35 (internal quotation marks and citation omitted).

## V.      Defendant Fails to Point to Any Error Cognizable on Appeal Related to the Destruction of Jury Questionnaires

**{54}**    Approximately five months after filing his first appeal, Defendant filed a second notice of appeal in the same cause of action. The second appeal arose from the district court's denial of Defendant's motion to retain juror questionnaires, a collateral question that Defendant pursued after the verdict and after the filling of his appeal from his conviction. Defendant's second appeal does not seek review of the district court's denial of Defendant's request to retain the questionnaires. It instead seeks reversal of his convictions, the same remedy sought by the original appeal, arguing that reversal is required because "the mandatory destruction rule is unconstitutional and unenforceable."

**{55}**    The State argues that the district court did not have jurisdiction to rule on the juror questionnaire motion, and even if there was jurisdiction, no procedure exists to permit Defendant to take a second appeal. Because Defendant's post-judgment motion sought only collateral relief in the district court, we disagree and determine that we have jurisdiction.

**{56}**    After a notice of appeal has been filed, a district court has jurisdiction to address "collateral matters not involved in the appeal." *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 39, 113 N.M. 231, 824 P.2d 1033 (internal quotation marks and citation omitted). A post-judgment request for collateral relief is "separate from the decision on the merits" and does not "destroy the finality of the decision." *Id.* ¶ 21 (internal quotation marks and citation omitted). The district court, therefore, had authority to enter a collateral order, and that order is subject to appeal. *See id.* ¶ 28 (approving of process wherein two appeals are taken in a case, one from the merits and one from a subsequent collateral order, and allowing for the two cases to be consolidated on appeal). We, therefore, have consolidated Defendant's two appeals, both of which seek reversal of Defendant's June 30, 2021 judgment, and sentence.

**{57}**    Defendant raises a single issue in his second appeal: Defendant argues that his convictions must be reversed because the district court denied his motion to preserve

the jury questionnaires beyond the 120 days after the final disposition of the case provided by Rule 5-606, and the destruction of the questionnaires violates Defendant's constitutional rights. In the district court, the sole reason stated by Defendant for preservation of the questionnaires was that "Defendant has asked that a third party review . . . the entire trial proceeding."

{58}    Defendant concedes he knows of no error in the selection of the jury venire, in the voir dire, or the selection of the jurors sworn for his trial (with the exception of the claim of juror bias addressed earlier in this opinion). Nonetheless, he argues that the destruction of jury questionnaires to protect the privacy of the jurors, even when no issue is raised on appeal requiring review of those questionnaires, violates his constitutional rights to due process, equal protection, and his right to appeal, and requires reversal of the judgment against him. We are not persuaded.

{59}    Defendant's argument on appeal, as best we are able to discern, is that he is entitled to reversal of his convictions because jury questionnaires have not been preserved for a future hunt for any sort of error not previously identified, in the hope that he may be able to bring a collateral challenge to the judgment if error is found. Defendant has cited no authority, which would support the remedy of reversal of his conviction on direct appeal when trial counsel, who reviewed the questionnaires, was present in the district court for this portion of the case, filed the motion to retain the questionnaires, and has made no claim of error that requires review of these questionnaires.

{60}    Reversal of a conviction on appeal requires a defendant establish that the district court erred. *See Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 ("[I]t is the appellant's burden to persuade us that the district court erred."). "On appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." *Id.* (internal quotation marks and citation omitted). Moreover, generally, Defendant must have brought that error to the district court's attention, preserving it for review on appeal by timely alerting the district court and the State to the claimed error, thereby giving the State an opportunity to respond, and the district court an opportunity to correct the error. *See* Rule 12-321; *see also Barreras v. N.M. Corr. Dep't*, 1992-NMSC-059, ¶ 22, 114 N.M. 366, 838 P.2d 983 ("We will not consider a matter not properly brought before the trial court for the first time on appeal."). Even the exception to preservation for fundamental error places the burden on the Defendant to identify and establish that an error occurred. *See State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448 ("Our review involves two basic steps. The first is to determine whether error occurred. In other words, our analysis begins at the same place as the analysis for reversible error." (text only) (citation omitted)).

{61}    Defendant having failed to identify any error that requires the jury questionnaires for review, we apply our presumption of correctness and do not consider Defendant's unpreserved argument further. Our ruling does not prevent Defendant from pursuing relief by way of a petition for writ of habeas corpus. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 5, 141 N.M. 801, 161 P.3d 846.

## VI.     Cumulative Error

**{62}**    We are not persuaded by Defendant's claim that there was pervasive error at trial in this case. We see no error requiring reversal of Defendant's conviction for CSP by force or coercion.

## CONCLUSION

**{63}**    We vacate Defendant's conviction of aggravated battery on a household member and remand for retrial on that count. We also vacate Defendant's conviction of false imprisonment on double jeopardy grounds. We otherwise affirm.

**{64}    IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**